IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

COURTNEY CROSBY,

              Petitioner,              No. 05-cv-0447 GEB KJN P

   vs.

T. SCHWARTZ, et al.,

              Respondents.           FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Petitioner is a state prisoner proceeding without counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2002 conviction for willfully failing to notify the sheriff of his change of address as a sex offender (Cal. Penal Code § 290(g)) and for failing to register as a sex offender within five days of his birthday (Cal. Penal Code § 290(a)(1)(C)). Petitioner is serving a sentence of 26 years to life pursuant to the Three Strikes Law.

        This action is proceeding on the amended petition filed December 30, 2005. (Dkt. No. 40.) The petition raises the following claims: 1) invalid waiver of right to a jury trial (claims A and B); 2) trial court erred by failing to allow petitioner to withdraw his waiver of his right to a jury trial (claim C); 3) denial of right to jury trial on prior conviction used to enhance his

1

1   sentence (claim D); 4) his conviction violates the Ex Post Facto clause, double jeopardy and due

2   process (claim E); 5) his sentence violates the Eighth Amendment (claim F); 6) the trial judge

3   abused discretion by failing to strike his prior convictions (claim G) ; 7) ineffective assistance of

4   counsel (claims H, I, J); 8) ineffective assistance of appellate counsel (claim K); 9) insufficient

5   evidence (claim J).

6          After carefully reviewing the record, the undersigned recommends that the

7   petition be denied.

8   II.  Anti-Terrorism and Effective Death Penalty Act ("AEDPA")

9          In Williams (Terry) v. Taylor, 529 U.S. 362 (2000), the Supreme Court defined

10  the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion for Section II of

11  the opinion constitutes the majority opinion of the court.  There is a dichotomy between

12  "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable

13  application of" that law.  Id. at 405.  "Contrary to" clearly established law applies to two

14  situations:  (1) where the state court legal conclusion is opposite that of the Supreme Court on a

15  point of law; or (2) if the state court case is materially indistinguishable from a Supreme Court

16  case, i.e., on point factually, yet the legal result is opposite.

17          "Unreasonable application" of established law, on the other hand, applies to

18  mixed questions of law and fact, that is, the application of law to fact where there are no factually

19  on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

20  Id. at 407-08.  It is this prong of the AEDPA standard of review which directs deference to be

21  paid to state court decisions.  While the deference is not blindly automatic, "the most important

22  point is that an unreasonable application of federal law is different from an incorrect application

23  of law. . . .[A] federal habeas court may not issue the writ simply because that court concludes in

24  its independent judgment that the relevant state-court decision applied clearly established federal

25  law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 410-

26  11 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

1  objectively unreasonable nature of the state court decision in light of controlling Supreme Court

2  authority.  Woodford v. Viscotti, 537 U.S. 19 (2002).

3           "Clearly established" law is law that has been "squarely addressed" by the United

4  States Supreme Court.  Wright v. Van Patten, 552 U.S. 120 (2008).  Thus, extrapolations of

5  settled law to unique situations will not qualify as clearly established.  See e.g., Carey v.

6  Musladin, 549 U.S. 70, 76 (2006) (established law not permitting state sponsored practices to

7  inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by

8  unnecessary showing of uniformed guards does not qualify as clearly established law when

9  spectators' conduct is the alleged cause of bias injection).

10          The state courts need not have cited to federal authority, or even have indicated

11  awareness of federal authority, in arriving at their decision.  Early v. Packer, 537 U.S. 3 (2002).

12  Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an

13  unreasonable application of, established Supreme Court authority.  Id.  An unreasonable error is

14  one in excess of even a reviewing court's perception that "clear error" has occurred.  Lockyer v.

15  Andrade, 538 U.S. 63, 75-76 (2003).  Moreover, the established Supreme Court authority

16  reviewed must be a pronouncement on constitutional principles, or other controlling federal law,

17  as opposed to a pronouncement of statutes or rules binding only on federal courts.  Early v.

18  Packer, 537 U.S. at 9.

19          However, where the state courts have not addressed the constitutional issue in

20  dispute in any reasoned opinion, the federal court will independently review the record in

21  adjudication of that issue.  "Independent review of the record is not de novo review of the

22  constitutional issue, but rather, the only method by which we can determine whether a silent state

23  court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

24  2003).

25          When reviewing a state court's summary denial of a claim, the court "looks

26  through" the summary disposition to the last reasoned decision.  Shackleford v. Hubbard, 234

1   F.3d 1072, 1079 n. 2 (9th Cir. 2000).

2          The California Court of Appeal was the last state court to issue a reasoned

3   decision addressing petitioner's claims that he was denied his right to a jury trial because he did

4   not expressly waive that right (claim B), the trial court erred in failing to allow him to withdraw

5   his jury trial waiver (claim C), his claim that he did not waive his right to a jury trial as to his

6   prior convictions (claim D), his claim alleging violation of the Ex Post Facto Clause (claim E),

7   his claim alleging that his sentence violated the Eighth Amendment (claim F), and his claim

8   alleging that the trial court abused its discretion in refusing to strike one of his prior convictions

9   (claim G).  The undersigned considers whether the denial of those claims by the California Court

10  of Appeal was an unreasonable application of clearly established Supreme Court authority.

11          Although not referenced by respondent, petitioner filed a habeas corpus petition in

12  the Sacramento County Superior Court.  A copy of the order denying the petition is attached to

13  petitioner's traverse.  Dkt. No. 57, pp. 44-45 of 112. The Superior Court issued a reasoned

14  decision addressing petitioner's claims that counsel was ineffective for failing to call Dr. Miller

15  to testify (claim H) and for failing to call witnesses at the sentencing hearing (claim I).

16  Accordingly, the undersigned considers whether the denial of those claims by the Superior Court

17  was an unreasonable application of clearly established Supreme Court authority.

18          Petitioner's remaining claims were denied by the California Supreme Court in

19  summary opinions.  (Respondent's Exhibits H, J.)  Accordingly, the undersigned independently

20  reviews the record to determine whether the denial of the remaining claims by the California

21  Supreme Court was an unreasonable application of clearly established Supreme Court authority.

22  III.  Background

23          The opinion of the California Court of Appeal contains a factual and procedural

24  summary.  After independently reviewing the record, the undersigned finds this summary to be

25  accurate and adopts it below.

26  ////

FACTUAL AND PROCEDURAL BACKGROUND

The People filed an amended information charging defendant with willfully failing to register as a sex offender (Pen.Code (FN1) § 290, subd. (a)), willfully failing to notifying the sheriff of his change of address (§ 290, subds.(f), (g)(2)), and failing to register within five days of his birthday (§ 290, subds. [former] (a)(1)(c), (g)(2)).

> FN1. All further statutory references are to the Penal Code unless otherwise indicated.

The information also charged defendant with having three prior convictions that brought him within the three strikes law. (§§ 667, subds.(b)-(I), 1170.12.) Those prior convictions were for forcible rape, forcible oral copulation, and robbery. (§§ 261, subd. (a)(2), 288a, subd. (c), 211.) The information alleged the robbery count supported an additional one-year state prison enhancement under section 667, subdivision (b).

At trial, Sacramento Sheriff's Deputy Scott Hufford testified he responded to a disturbance call on July 5, 1999, at 1842 Ethan Way, apartment 22. There, he encountered defendant and two other people.

When asked to identify himself, defendant falsely told the deputy he was Sirleaf Flomo and provided Flomo's birthday. Deputy Hufford asked defendant for his identification. Defendant claimed to have none, but provided the deputy with a Social Security number. He told the deputy he had left his identification at his apartment around the corner.

Deputy Hufford ran a records check and found the Social Security number defendant gave him did not match Sirleaf Flomo's. When the deputy asked again for identification, defendant reached into his back pocket and provided a driver's license to which defendant had attached a passport photograph of himself. To the officer, the identification was obviously altered and not an official document. Defendant also gave the officer a Social Security card for Sirleaf Flomo. This card showed defendant had transposed two of the digits in the Social Security number he provided to the deputy.

One of the other men at the apartment informed the deputy of defendant's true identity. The deputy ran another records check and discovered defendant had a no-bail warrant for failing to register under section 290. The deputy arrested defendant.

In the search incident to defendant's arrest, the officer found a wallet that contained Kaiser Permanente medical cards and a Bel Air service plus card for Sirleaf Flomo. The wallet also contained a California identification card for Kirkland Abel that had defendant's picture on it. Defendant told deputy Hufford he was currently living at 2045 Wyda Way, apartment one.

Sacramento Sheriff's Detective David Anderson testified the most recent sex offender registration for defendant was July 1998, a year before he was arrested. On that registration, defendant reported his address as apartment 23 of the same

Ethan Way apartment complex. Defendant also reported his date of birth as February 22, 1962. The form advised defendant of the lifetime nature of the registration requirement and the requirement that he register both annually (within five working days of his birthday) and within five working days of moving. Defendant initialed the blanks next to this information that he had read them. Between the date of his original registration in 1989 and July 1999, (FN2) defendant had submitted his annual registration three times and submitted nine change-of-address registrations.

> FN2. Department of Justice employee Lydia Pantoja testified the annual update requirement became effective in January 1995.

Stephanie Shatto was the apartment manager for the Ethan Way apartments. She testified defendant and his mother lived in apartment 23 of that complex (next door to where he was found) in February 1999. Shatto assisted defendant's mother in moving property out of the apartment around February 13, 1999. The apartment was completely vacated by February 15.

Detective Anderson presented defendant's jail records that showed defendant had been released from the Sacramento County Jail on February 24, 1999.

April Lowe was a friend of the defendant. In March 1999, defendant told her he was living in West Sacramento, although she did not know how long he lived there. (FN3)  Sometime between February 1999 and July 1999, defendant told Lowe he was homeless.

> FN3. Later in her testimony, she claimed to have told the officers defendant had lived there for two weeks.

Sirleaf Flomo testified he lost his wallet in about March 1999, and identified the one taken from defendant as his. Flomo also identified the driver's license, Social Security card, Bel Air card and Kaiser medical cards as belonging to him.

Kirkland Abel testified his wallet "came up missing" in 1999. Abel testified he left his wallet on a couch where he was staying and when he returned it was gone. Abel testified he was the owner of the identification card possessed by defendant.

The defense rested without presenting evidence.

The trial court convicted defendant of failing to register when he moved and failing to register within five days of his birthday. (FN4)  The court found all four of the prior conviction allegations to be true. The court sentenced defendant to 26 years to life.

> FN4. The court granted the People's motion to dismiss one count of the amended information, section 290, subdivision (a).

(Respondent's Lodged Document D, Appendix, pp. 1-5.)

////

IV.  <u>Discussion</u>

      A.  <u>Procedural Default</u>

      Respondent argues that the claims designated A and K of the amended petition are procedurally defaulted.  In claim A, petitioner argues that he did not voluntarily and intelligently waive his right to a jury trial.  Claim K alleges ineffective assistance of appellate counsel.  These claims were denied by the California Supreme Court by order dated November 16, 2005, citing <u>In Re Clark</u>, 5 Cal.4th 750 (1993).  (Respondent's Lodged Documents I, J.)[1]  <u>Clark</u> stands for the proposition that the petition was not timely brought.

      Before denial of a claim on state procedural grounds will bar federal review, the rule on which the state court relied must constitute an "adequate and independent state ground" for denying petitioner's claims.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991).  In <u>Bennett v. Mueller</u>, 322 F.3d 573 (9th Cir. 2003), the Ninth Circuit held that California's timeliness rule was an "independent" state ground because it was "not interwoven with federal law."  <u>Id.</u> at 581-82.  The Ninth Circuit could not determine, however, whether the timeliness rule was "adequate" in the sense that it was consistently applied.  <u>Id.</u> at 583.  To provide guidance to the district court on remand, the Ninth Circuit held that the burden of proof on adequacy rests with the state because procedural default is an affirmative defense, <u>id.</u> at 585-86, and laid out a burden-shifting procedure to be used in litigating the issue.  First, respondent must plead the existence of an adequate and independent state procedural ground as a defense; once he does, petitioner must "place the defense in issue."  <u>Id.</u> at 586.  Generally, petitioner's burden in this regard can be satisfied "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule."  <u>Id.</u>  If petitioner satisfies this burden, the court held, "the ultimate burden [of proving that the state procedural bar is adequate and independent] is the state's."  <u>Id.</u>

---

    [1]  Magistrate Judge Nowinski previously found that this petition filed in the California Supreme Court raised petitioner's claims A and K.  <u>See</u> Dkt. No. 35.

1       In <u>King v. Lamarque</u>, 464 F.3d 963 (9th Cir. 2006), the Ninth Circuit clarified its

2   holding in <u>Bennett</u>. The court in <u>King</u> held that in cases where a state procedural rule has

3   previously been found to be inadequate, a petitioner "may fulfill [his] burden under <u>Bennett</u> by

4   simply challenging the adequacy of the procedure." <u>Id</u>. at 967.  In such instances, "the burden

5   then shifts back to the government to demonstrate that the law has subsequently become

6   adequate." <u>Id</u>.  Such a rule is necessary, the court stated, "to maintain the primary principle we

7   announced in <u>Bennett</u>: the government bears the ultimate burden of establishing the adequacy of

8   a rule." <u>Id</u>.

9       The state procedural rule at issue in <u>King</u> was the same timeliness rule at issue

10  here.  The court in <u>King</u> observed that the rule had previously been found to be inadequate in

11  capital cases, citing <u>Morales v. Calderon</u>, 85 F.3d 1387 (9th Cir. 1996).  <u>King</u>, 464 F.3d at 967.

12  Because petitioner in <u>King</u> had challenged the adequacy of a state procedural rule previously

13  found to be inadequate, the court stated that on remand "the government must demonstrate that

14  California's 'substantial delay' rule has become sufficiently clear and consistently applied to

15  justify barring federal review of [the petitioner's] claim." <u>Id</u>. at 968.

16      In this case, petitioner has sufficiently challenged California's timeliness rule, a

17  rule that the Ninth Circuit has previously found to be inadequate.  In the traverse, petitioner

18  "denies that the alleged procedural default is independent . . . furthermore it was not adequate,

19  the rule in question was not firmly established and regularly followed at the time petitioner

20  allegedly defaulted herein . . .." (Dkt. No. 57, p. 2 of 112.)  This suffices to satisfy petitioner's

21  burden under <u>King</u>.  <u>See King</u>, 464 F.3d at 967 (petitioner who claimed that "the California

22  Supreme Court's dismissal of his case demonstrates that it inconsistently applies the timeliness

23  rule because he properly justified his delay" met his burden); <u>Dossman v. Newland</u>, 216 Fed.

24  Appx. 698, 698 (9th Cir. 2007) (Unpub.Disp.) (petitioner who claimed the timeliness rule was

25  not "clear, consistently applied, and well-established at the time of [his] purported default" met

26  his burden under <u>King</u>); <u>Hernandez v. Woodford</u>, No. C 06-3975 WHA (PR), 2008 WL

1809082, *3 (N.D.Cal. 2008) (petitioner satisfied his burden by contending that his claims were

not procedurally defaulted).

The burden thus shifted to respondent to "present[ ] state authority showing that

the timeliness rule was clear and certain, well-established, and consistently applied in non-capital

cases as of 200[4]" when petitioner filed his state habeas petition.  Townsend v. Knowles, 562

F.3d 1200, 1207 (9th Cir. 2009).  Because respondent did not do so, he has not met his burden of

proving the affirmative defense, and the court thus turns to the merits of claims A and K.[2]

B. Claim A

Petitioner alleges that his waiver of his right to a jury trial was involuntary

because he was coerced to make the waiver by trial counsel.  In addition, petitioner argues that

his waiver was involuntary because he suffered from mild mental retardation.

A waiver of a constitutional right must be voluntary, knowing and intelligent to be

valid.  Brady v. United States, 397 U.S. 742, 748 (1970); see also Boykin v. Alabama, 395 U.S.

238 (1969). When determining voluntariness, all of the relevant circumstances must be

examined.  Brady, 397 U.S. at 749.  A waiver is voluntary if it "was the product of free and

deliberate choice rather than intimidation, coercion, or deception."  Colorado v. Spring, 479 U.S.

564, 573 (1987) (citations omitted).  A defendant's representations on the record, as well as any

findings made by the judge accepting the waiver, constitute a "formidable barrier in any

subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); see also

Sanchez v. United States, 50 F.3d 1448, 1455 (9th Cir. 1995) (when a defendant denies any

threats or coercions during a plea colloquy, "[c]ourts generally consider such responses to be

strong indicators of the voluntariness of the defendant's guilty plea.").

The undersigned first considers petitioner's claim that his waiver of his right to a

jury trial was involuntary because he suffered from mild mental retardation.  In particular,

_____

[2] If respondent had wished to file further briefing addressing the issue of adequacy in response to the traverse, he could have sought leave to do so.

petitioner alleges that due to his mental retardation, he did not understand the consequences of

his waiver.   In support of this claim, petitioner refers to the March 4, 2002 report by clinical

psychologist Jeffrey E. Miller regarding his examination of petitioner.  (See Dkt. 57, pp. 48-55 of

112.)  In the report Dr. Miller states that petitioner suffers from mild mental retardation as well as

schizophrenia, paranoid type, and a dependent personality disorder.  (Id. at 48.)  Dr. Miller states

that following petitioner's incarceration for the pending charges, petitioner received psychiatric

treatment and was not stabilized on psychotropic medication.  (Id. at 50.)  Dr. Miller stated that

following his last examination of petitioner in November of 2000, petitioner's medications were

changed and his mental state had greatly improved.  (Id.)

Dr. Miller performed a variety of tests on petitioner and concluded that he "learns

new skills and information [at] a very slow rate, and only after a great deal of individual

instruction, practice and repetition.  He had difficulties with understanding more abstract

concepts and is fairly concrete in his thinking." (Id. at 52.)  Petitioner's academic skills were at

a third to fourth grade level.  (Id.)

In his report Dr. Miller also states that he examined petitioner on November 8,

2000, at which time petitioner told him that at the time he failed to register, he had been told by a

friend that there was a warrant issued for his arrest for failing to register.  (Id. at 49.)  Petitioner

intended to use false identification to avoid being arrested.  (Id.)  Petitioner told Dr. Miller that

he altered identification belonging to another person by placing his passport photo on the ID.

(Id.)

Petitioner waived his right to a jury trial on February 7, 2002:

Court:  Mr. Crosby, you do have on these matters the right to a speedy public jury
trial.  That is one of the rights that you have.  The Court's perfectly willing to go
down that road and have jury trials.  That's what we do all the time.  We've got
plenty of seats out in the audience, plenty of places for the jurors here, and we're
perfectly willing to proceed in that fashion.

Although you do have the right to waive a jury trial, that is to give up a jury trial,
that is one of the rights that you have as long as the District Attorney's Office
would consent to that.  Mr. Higgins has already indicated to the Court that the

1      D.A.'s office would consent to your waiver of a jury trial in the 290 case, the
       failure to register charge that's against you.
2
       Mr. Crosby, have you discussed that with your counsel, and are you satisfied that
3      you want to waive your right to a jury trial in that case?

4      Petitioner:  Yes, sir.

5      Court:  Mr. Walton, do you join in the waiver?

6      Mr. Walton:  Join, Your Honor.

7      Court:  The People join in that waiver?

8      Mr. Higgins:  Yes.  People join, Your Honor.

9      Court:  Mr. Crosby, if you waive your right to a jury trial, then I as the judge in the
       matter would act as not just the judge but also the finder of fact as to whether or
10     not those allegations against you were true or not true and whether you were guilty
       or not guilty of the three charges included in that Information.  Do you understand
11     that?

12     Petitioner:  Yes, sir.

13     Court:  It appears to me that you understand what is going on, Mr. Crosby.  So the
       Court will accept your waiver of a jury trial, and it will proceed as a court trial on
14     the 290 charge, that's case 03592.

15  (RT at 12-13.)

16         On February 11, 2002, petitioner made a <u>Marsden</u> motion.[3]  At the hearing on this

17  motion, petitioner argued that trial counsel had improperly coerced him into waiving his right to

18  a jury trial.  (RT at 18-34.)  Petitioner did not argue that he did not understand what he was doing

19  when he made the waiver.  (<u>Id</u>.)

20         The record does not support petitioner's claim that mild mental retardation caused

21  him not to understand what he was doing when he waived his right to a jury trial.  When asked

22  by the court if he understood the nature of the waiver, petitioner responded "yes, sir."

23  Petitioner did not tell the court at the time that he made the waiver that he did not understand

24  what was going on.  <u>Blackledge v. Allison</u>, 431 U.S. at 73-74 (a defendant's representations on

25  _____

26         [3] <u>People v. Marsden</u>, 2 Cal.3d 118 (1970).

                                    11

the record, as well as any findings made by the judge accepting the waiver, constitute a

"formidable barrier in any subsequent collateral proceedings.") In addition, petitioner had four

prior convictions.  His previous experience in criminal courts undermines his claim that he did

not understand the nature of the proceedings.  See Smith v. Mullin, 379 F.3d 919, 933-34 (10th

Cir. 2004) (defendant with prior experience of criminal justice system made knowing and

intelligent waiver notwithstanding his mild to borderline mental retardation).  In addition, at the

Marsden hearing held five days after petitioner waived his right to a jury trial, petitioner did not

argue that the waiver was involuntary because he did not understand the nature of the

proceedings.  Petitioner's ability to make this Marsden motion where, as will be discussed below,

he clearly articulated his problems with defense counsel, also belies his claim that his waiver of

his right to a jury trial was involuntary due to his mild mental retardation.

The totality of the circumstances do not support petitioner's claim that his mild

mental retardation rendered his waiver of his right to a jury trial involuntary.  See Clark v.

Mitchell, 425 F.3d 270, 283 (6th Cir. 2005)(a borderline retarded defendant had voluntarily

confessed where the police read him his Miranda rights aloud, and where he affirmed his

understanding of those rights after each paragraph, signed a waiver form, and was offered the

chance to make corrections to his tape-recorded statements); United States v. Turner, 157 F.3d

552, 555 (8th Cir. 1998)) (holding that defendant's borderline IQ did not prevent knowing and

intelligent waiver of rights); Correll v. Thompson, 63 F.3d 1279, 1288 (4th Cir. 1995)

(determining that despite defendant's IQ of 78, he gave a valid waiver because he received

warnings several times, both while in custody for the crime at issue and for prior crimes); Rice v.

Cooper, 148 F.3d 747, 751 (7th Cir. 1998) (holding that mildly retarded defendant gave valid

waiver because police had no reason to suspect that he did not understand the warnings).

Accordingly, the undersigned finds this claim is without merit.

Petitioner next alleges that his waiver of his right to a jury trial was involuntary

due to coercion by trial counsel.  Petitioner alleges that during the conversation he had with

counsel regarding whether he should waive this right, trial counsel falsely told him: 1) there was no defense to the charge; 2) he should admit his prior convictions; and 3) if petitioner was found guilty by a jury, the judge would sentence petitioner to thirty years to life.  Petitioner alleges that he asked trial counsel to recuse the judge based on the information that he would sentence petitioner to thirty years to life if he was convicted by a jury.  Trial counsel failed to file this motion.

Attached to the answer is a declaration by trial counsel, Laurence Walton.  In this declaration, Mr. Walton states that he never told petitioner that there was no defense to the charges and that he never told petitioner that if he did not waive his right to a jury trial and was found guilty by a jury the judge would sentence him to thirty years.

Petitioner raised these issues at the February 11, 2002, <u>Marsden</u> hearing.  (RT at 19.)  The court offered its own opinion regarding why counsel had advised petitioner to waive his right to a jury trial:

> Court: Would you share with the Court what you're talking about as far as what you believe your defense is to the failure to register?
>
> Petitioner: Failure to register.  I was unable at the time to go down and register because I was suffering from schizophrenia.  Doctor of forensics medicines has—maybe you've seen it.  I don't know.  Maybe you read it.  I don't know.  He's already made his report.
>
> Court:  Let me stop you there and tell you that the Court has heard from Mr. Walton that that is the defense, and that he doesn't believe that you willfully failed to register and that's why he's, in my perspective as a judge, he hasn't said this much but that's why he's asking to have this as a court trial as opposed to a jury trial because he wants the Court to be able to reach that defense legal issue as to whether or not your failure to register was willful within the meaning of the statute.
>
> ***
>
> If Mr. Walton gives you his candid advice that he thinks you should admit the priors because he doesn't believe there's an ability to get around that, that would be his professional advice.  I don't know how I would be able to say some other counsel would say something different to you.

(RT at 22-23.)

In response to petitioner's claims, counsel stated that he had advised petitioner on many occasions that one of the charges was a general intent crime and that it would be better to proceed with that case in a court trial because it was a general intent crime:

> [T]hat is to say, failure to register and that, as the Court has commented, involves the word "willfully" and that's an act or failure to act, which is omission when someone fails to register.  It is just as much a violation as saying to the authorities that I'm not going to register, an intentional act.  So that is the situation Mr. Crosby is in.
>
> ***
>
> I advised Mr. Crosby that it would be better to proceed with a court trial on the issue of the failure to register, case ending 3592, and then just trail the receiving stolen property issue of that case until this case is resolved.

(RT at 28-29.)

Regarding the sentence petitioner faced, counsel stated, "I never advised him that the Court was going to treat him as –in a certain fashion, but I have advised him it's a three strikes case and of the potential penalties involved."  (RT at 28.)

Counsel went on to state that his defense of the failure to register charge was based on the doctor's opinion that petitioner was "on SSI and unable to care for himself, on the streets and that's what was causing his failure of memory at the time."  (RT at 29.)

In denying the Marsden motion, the trial judge rejected petitioner's claim that counsel told him he would face 30 years to life if he did not waive a jury trial and that there was no defense:

> Court: When the court looks at each of the substantive allegations, there's some here that cause me to have to say okay, you know, one of you is lying to me because you've come in here and told me hey, Mr. Walton came down there and told me that I, Judge Candee, was gong to sentence you to 30 years to life and I'm trying to figure out what's going on.  Because if you're correct in your analysis of it, then you're relating to me this scenario that had Mr. Walton come down and tell you well, we've got this judge here who has already made up his mind – even though that's inaccurate – we've got a judge here that is going to sentence you to 30 years to life and I want you to waive a jury trial and go with Judge Candee and you trotted right in here and say well, I just did what Mr. Walton told me.
>
> Petitioner: That's what I did.

14

Court: It doesn't make any sense when I then have to say, what do I find to be the facts?  Seems to me it's much more consistent with what Mr. Walton has represented that hey, he's told you you're facing something like that at sentencing because that's what a three-strikes case is, a minimum of 25 years to life and he's obliged to tell you what you're facing.  So if he tells you what you're facing and you somehow misread that as something that that's what you're going to get, from the Court's standpoint – if I have to say okay, who do I believe, do I believe Mr. Crosby when he tells me judge, I'm being up with you – now this guy comes to me and tells me I have judge for you that is going to sentence you to 30 years to life and I want you to waive a jury and go with that judge?

No.  It seems to me much more believable what Mr. Walton has done probably on many occasions is reminded you of how serious this is and that you are facing that, but it does not appear to the Court that it is believable that Mr. Walton went and told you you're facing, and this judge has already made up hi mind that he's going to give you 25 to life, and now what I want you to do is go in there and tell that judge I want to be judge – alone trial just to insure that I get 30 years to life – that doesn't make any sense.

Petitioner: But I told you when he told me that I asked him the – so we could change judge.  He refused.

Court: See – again, it doesn't appear to me to be anything that is believable that that could be the scenario of what happened.  As far as defense being prepared for trial, it appear from Mr. Walton's representations that the matter is prepared.  It is ready for trial.

(RT at 32-33.)

The trial court's finding that petitioner's claims that trial counsel told him he would be sentenced to 30 years if found guilty after a jury trial and that there was no defense to the charges were not credible are presumed to be correct unless petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Petitioner has not rebutted the trial court's findings of fact regarding his credibility.  The record supports the trial court's findings that petitioner's claims were not credible.  For that reason, the undersigned finds that petitioner's claims that trial counsel coerced him to waive his right to a jury trial by telling him that there was no defense and that he would be sentenced to 30 years if found guilty by a jury are unsupported by the record.

Petitioner also argues that his waiver of his right to a jury trial was invalid because trial counsel told him to admit his prior convictions.  Petitioner did not admit his prior

15

convictions.  The prosecution was required to prove them at the court trial.  Under these circumstances, the undersigned does not understand the grounds for this claim.  Accordingly, this claim should be denied.

After independently reviewing the record, the undersigned finds that the denial of this claim by the California Supreme Court was not an unreasonable application of clearly established Supreme Court authority.  Accordingly, this claim should be denied.

C.  <u>Claim B</u>

Petitioner alleges that his waiver was invalid because he did not expressly state on the record that he waived his right to a jury trial.  The California Court of Appeal denied this claim for the following reasons:

> Waiver
> The Sixth Amendment, made applicable to the states in this context by the Fourteenth Amendment of the federal Constitution, confers upon a defendant in a criminal prosecution the right to a trial by jury." (<u>People v. Collins</u> (2001) 26 Cal.4th 297, 304.) "Nonetheless, the practice of accepting a defendant's waiver of the right to jury trial, common in both federal and state courts, clearly is constitutional." (<u>Id</u>. at p. 305.) "To protect against inappropriate incursions on a defendant's exercise or waiver of a fundamental constitutional right, such as that to jury trial, the federal Constitution long has been construed as requiring procedural safeguards, such as the requirement that a waiver of the right in question be made by the defendant personally and expressly." (<u>Id</u>. at pp. 307-308.) The same holds true under the state Constitution. (<u>Id</u>. at p. 308.) "As with the waiver required of several other constitutional rights that long have been recognized as fundamental, a defendant's waiver of the right to jury trial may not be accepted by the court unless it is knowing and intelligent, that is, "'made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it,'" as well as voluntary "'in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" [Citations.] (<u>Id</u>. at p. 305.)
>
> With these principles in mind, we turn to the waiver here. On the first day of trial, the court stated, "And one of the points [defense counsel] was raising was he believes his client, [defendant], is going to waive a panel and have the Court act as both the judge and the finder of fact in the 290 case." Defense counsel agreed the court had correctly stated his position. The court continued with the following colloquy:
>
> THE COURT: [Defendant], you do have on these matters the right to a speedy public jury trial. That is one of the rights that you have. The Court's perfectly willing to go down that road and have jury trials. That's what we do all the time. We've got plenty of seats out in the audience, plenty of places for the jurors here,

and we're perfectly willing to proceed in that fashion.

Although you do have the right to waive a jury trial, that is to give up a jury trial, that is one of the rights that you have as long as the District Attorney's Office would consent to that. Mr. Higgins has already indicated to the Court that the D.A.'s office would consent to your waiver of a jury trial in the 290 case, the failure to register charge that's against you.

[Defendant], have you discussed that with your counsel, and are you satisfied that you want to waive your right to a jury trial in this case?

THE DEFENDANT: Yes, sir.

THE COURT: [Defense counsel], do you join in that waiver?

[DEFENSE COUNSEL]: Join, Your Honor.

THE COURT: The People join in that waiver?

[PEOPLE]: Yes. People join, Your Honor.

THE COURT: [Defendant], if you waive your right to that jury trial, then I as the judge in the matter would act as not just the judge but also the finder of fact as to whether or not those allegations against you were true or not true and whether you were guilty or not guilty of the three charges included in that Information. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: It appears to me that you understand what is going on, [defendant]. So the Court will accept your waiver of a jury trial, and it will proceed as a court trial on the 290 charge, that's case 03592.

For the record's purposes, [defendant], are you also willing to enter at this point a general time waiver on the 496 case so we can delay that proceeding until after the case over the 290 charge is resolved (FN5) either through you being acquitted-

> FN5. Defendant had another pending case-violation of section 496. This case was then trailed behind the case which is the subject of this appeal.

THE DEFENDANT: Yes.

THE COURT:-or you being sentenced over that?

THE DEFENDANT: Yes, sir."

Defendant argues this colloquy demonstrated defendant "'understood' and 'wanted to' but did not say he 'did' waive his right to a jury trial." Despite the grammatical parsing defendant would have us perform, we conclude it demonstrates defendant was adequately advised of his right to a jury trial and intended to and expressly waived his right to a jury trial. In the context of this

17

colloquy, defendant's answer of "Yes, sir" to the question of whether he wanted to waive his right to a jury trial, and to the question of whether he understood what he was giving up, constituted an express waiver of his right. Defendant's waiver was made knowingly and intelligently in that it was made in full awareness of the right being abandoned and the consequences of abandoning it. Defendant met with counsel and discussed this prior to waiving his right. Further, defendant's waiver was voluntary in the sense that it was the product of defendant's free choice and not the product of intimidation, coercion, or deception.

Defendant directs us to <u>People v. Holmes</u> (1960) 54 Cal.2d 442, 443, to support his argument the colloquy in the instant case was insufficient. That case is inapposite. In <u>Holmes</u>, <u>supra</u>, the defendant acknowledged his name, that he was charged with selling heroin, and that he had the right to a jury trial. (<u>Ibid</u>.) At no time did the defendant evidence any express desire to waive his right to the jury trial. (<u>Ibid</u>.) Here, by contrast, defendant responded affirmatively when the court asked him if he wanted to waive his right to a jury trial. This was sufficient.

(Respondent's Lodged Document D, Appendix, pp. 5-9.)

While it may be desirable for a trial court to conduct an even more thorough colloquy with the defendant before accepting a jury trial waiver, the failure to do so does not violate the Constitution.  <u>See</u> <u>United States v. Bishop</u>, 291 F.3d 1100, 1113 (9th Cir. 2002); <u>United States v. Cochran</u>, 770 F.2d 850, 851 (9th Cir. 1985); <u>see</u> <u>also</u> <u>Adams v. Peterson</u>, 968 F.2d 835, 837, 839 n. 1, 843 (9th Cir. 1992) (en banc) (concluding that a waiver of a jury trial and a consent to a trial on stipulated facts were valid despite a limited colloquy).  In this case, the trial court asked petitioner whether he understood his right to a jury trial and petitioner answered that he did. The trial court asked petitioner whether he wished to waive that right and he answered "yes sir."  The record makes it clear that petitioner was informed of his right to a jury trial and he waived that right.  Petitioner's failure to expressly state on the record "I am waiving my right to a jury trial" did not render his waiver invalid.

The denial of this claim by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority.  Accordingly, this claim should be denied.

D.  <u>Claim C</u>

Petitioner alleges that *the* trial court violated his constitutional rights by refusing

to allow him to withdraw his waiver of his right to a jury trial.  The California Court of Appeal

denied this claim for the reasons stated herein:

> Next, we turn to defendant's argument the court abused its discretion in not allowing him to withdraw his waiver.
>
> Defendant waived his right to a jury trial on Thursday, February 7, 2002. The court said the parties had anticipated jury selection would take a day and one-half to two days, and it did not expect the People's witnesses to be ready that day. The People confirmed their witnesses would not be available until the following day. Based on the court's and defense counsel's schedule, the court adjourned the proceedings to the following Monday morning. Presumably any jury venire was discharged at that time.
>
> When defendant returned to court on the following Monday, he brought a Marsden (FN6) motion based upon his claim his attorney misled him into waiving his right to a jury trial and told him he had no defense. Defendant raised additional matters with the court about his dissatisfaction with counsel. The court denied defendant's motion. Defendant told the court he now wanted a jury trial.
>
> > FN6. People v. Marsden (1970) 2 Cal.3d 118.
>
> At the conclusion of the Marsden motion hearing, the court asked the People if they would join in defendant's request to withdraw his jury trial waiver in light of the fact that defense counsel did not join in the request. After a short break, the People argued against the withdrawal of the waiver. The People noted the case was approaching three years old due to a number of continuances. (FN7)  The People noted they agreed to conduct the section 290 trial before the section 496 trial based on the representation defendant was waiving his jury trial in this case. Further, the People noted they had reversed the sequence of their witnesses based on this scheduling agreement. The People had arranged for those witnesses to be present that morning. The People argued they believed defendant's actions constituted a further delay tactic. Counsel for the defense asserted he believed his client's interests were best served by a court trial.
>
> > FN7. Because the age of the case does not affect our analysis of this argument, we do not address the lengthy pretrial process where defendant was declared incompetent to stand trial and then later found competent.
>
> The court denied the defendant's motion. The court found that the motion was untimely as the first witness was ready to be called.
>
> "It is well established that a waiver of a jury trial, voluntarily and regularly made, cannot afterward be withdrawn except in the discretion of the court." (People v. Chambers (1972) 7 Cal.3d 666, 670.) "Absent special circumstances the court may deny a motion to withdraw such a waiver especially where adverse consequences will flow from the defendant's change of mind. In exercising its discretion the court may consider such matters as the timeliness of the motion to withdraw the waiver, the reason for the requested withdrawal and the possibility that undue delay of the trial or inconvenience to witnesses would result from

1    granting the motion." (<u>Id</u>. at pp. 670-671.)

2        In <u>People v. Chambers</u>, <u>supra</u>, the defendant waived his right to a jury trial on the
3    first day of trial. (7 Cal.3d at p. 670.) When he appeared in court later that same
     day, the court denied his request to withdraw his waiver "stating only that
4    defendant's brother opposed a court trial." (<u>Ibid</u>.) On these facts, the Supreme
     Court concluded the trial court's denial of this motion was not an abuse of
5    discretion. (<u>Id</u>. at p. 671.)

6        Here, the court considered the timeliness of the motion and its impact on the
     witnesses who were ready to present their testimony that morning. The trial was
7    ready to go forward at the time this motion was made. Reconstituting the jury
     venire would take time, after which the court would have to go through a day or
8    two of jury selection. Requiring witnesses to return after that time would cause
     them inconvenience. More importantly, the court heard the defendant's claim he
9    was misled by defense counsel into waiving his jury trial right. The court found
     that claim to be not credible. That credibility call was squarely in the trial court's
10   discretion. (<u>People v. Ochoa</u> (1993) 6 Cal.4th 1199, 1206 (credibility
     determinations are for the finder of fact).)  On these facts, we conclude the trial
11   court did not abuse its discretion in denying defendant's motion. (Footnote
     omitted.)

12   (Respondent's Lodged Document D, pp. 10-13.)

13       "If the motion to withdraw [the jury waiver] is untimely, however, a trial court

14   does not deprive the defendant of the right to a jury trial by denying the motion."  <u>Zemunski v.</u>

15   <u>Kenney</u>, 984 F.2d 953, 955 (8th Cir. 1993), citing <u>United States v. Mortensen</u>, 860 F.2d 948,

16   950-51 (9th Cir. 1988).  "Although timeliness depends on the circumstances of each case, '[a]

17   withdrawal motion is timely when granting the motion would not unduly interfere with or delay

18   the proceedings.'"  <u>Id</u>., quoting <u>Mortensen</u>, 860 F.2d at 950.

19       Petitioner's motion to withdraw his jury trial waiver was made the on the day trial

20   was to begin.  Granting petitioner's motion would have interfered with and delayed his trial.  In

21   addition, the trial court found petitioner's claims that he had been misled into making this waiver

22   to be not credible.  Under these circumstances, the trial court's denial of the motion was not a

23   violation of clearly established Supreme Court authority.[4]

24   _____

25       [4]  The undersigned notes that the Sixth Circuit even held that the district court erred in
     granting habeas corpus relief to a petitioner who claimed that the trial court's abuse of discretion
26   in refusing to permit him to withdraw his jury trial waiver was, "of itself, a violation of the Sixth

1        The denial of this claim by the California Court of Appeal was not an

2   unreasonable application of clearly established Supreme Court authority.  Accordingly, this claim

3   should be denied.

4        E.  Claim D

5        Petitioner alleges that he was denied his Sixth Amendment right to a jury trial as

6   to his prior convictions that were used to enhance his sentence.  In particular, petitioner contends

7   that he did not specifically waive his right to a jury trial as to his prior convictions.

8        The California Court of Appeal addressed and rejected the argument raised in

9   footnote 21:

> In a footnote of defendant's opening brief, he argues his waiver of the jury trial
> was ineffective as to the enhancement allegations.  We disagree.  "Where the
> whole cause–substantive offenses and sentencing allegations–is tried in a unitary
> proceeding, a constitutionally effective waiver of jury trial is required."  (People v.
> Vera (1997) 15 Cal.4th 269, 277.)  However, it is long settled that "'where a
> defendant waives a jury trial he is deemed to have consented to a trial of all of the
> issues in the case before the court sitting without a jury.' [Citation.]" (People v.
> Berutko (1969) 71 Cal.2d 84, 94.)  Thus, where a defendant waives his right to a
> jury trial generally, a specific waiver of jury trial as to prior convictions is not
> required.  (Berutko, at p. 94.)  Defendant waived his right to a jury in "this case."

15  (Respondent's Lodged Document D, attachment, pp. 9-10, n. 5.)

16       When asking petitioner whether he waived his right to a jury trial, the trial court

17  did not specifically ask petitioner whether he waived his right to a jury trial as to his prior

18  convictions.  However, "where a defendant waives a jury trial he is deemed to have consented to

19  a trial of all the issues in the case before the court sitting without a jury."  Wright v. Craven, 412

20  F.2d 915, 918-19 (9th Cir. 1969).  In Wright, the defendant was convicted of selling heroin with

21  two prior felony convictions.  Id. at 916.  The Ninth Circuit held that by waiving the right to a

22  jury trial as to the heroin charge, the defendant also "waived jury consideration of the prior

23

24  Amendment."  Sinistaj v. Burt, 66 F.3d 804, 807-08 (6th Cir. 1995).  In so ruling, the Sixth
    Circuit  found no authority "for the proposition that when a state court abuses its discretion in
25  denying a defendant's motion to withdraw a previously filed waiver of jury trial, the result is a
    violation of the United States Constitution." Id. at 808.

26

1   convictions charged."  Id. at 919.  Although the undersigned is unaware of any Supreme Court

2   law on point, it was reasonable for the California Court of Appeal to find that when petitioner

3   waived his right to a jury trial, he waived his right to a jury determination of all the issues in the

4   case, including those that formed the basis of the trial court's sentencing decision.

5           Moreover, there is no clearly established Supreme Court law requiring a jury trial

6   as to prior convictions.  In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court

7   made it clear that "[o]ther than the fact of a prior conviction, any fact that increases the penalty

8   for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved

9   beyond a reasonable doubt."  530 U.S. at 490; accord Cunningham v. California, 549 U.S. 270,

10   274-75 (2007); Blakely v. Washington, 542 U.S. 296, 301 (2004).  The Court in Apprendi found

11   that recidivism was distinguishable from other matters employed to enhance punishment because

12   (1) "recidivism is a traditional, if not the most traditional, basis for a sentencing court's

13   increasing an offender's sentence," (2) "recidivism does not relate to the commission of the

14   [charged] offense[,]" and (3) prior convictions result from proceedings that include substantial

15   procedural protections.  530 U.S. at 488 (internal quotation marks, alterations and citations

16   omitted).  In carving out this "narrow exception" for prior convictions, the Court in Apprendi

17   explicitly declined to overrule its decision in Almendarez-Torres v. United States, 523 U.S. 224

18   (1998).  Apprendi, 530 U.S. at 489-90 ("Because Almendarez-Torres had admitted the three

19   earlier convictions for aggravated felonies–all of which had been entered pursuant to proceedings

20   with substantial procedural safeguards of their own–no question concerning the right to a jury

21   trial or the standard of proof that would apply to a contested issue of fact was before the Court.

22   . . . More important, . . . our conclusion in Almendarez-Torres turned heavily upon the fact that

23   the additional sentence to which the defendant was subject was the prior commission of a serious

24   crime.") (internal quotation marks and citation omitted).

25           Petitioner also argues that his failure to waive his right to a jury trial as to his prior

26   convictions violated his right to Equal Protection.  Petitioner has not stated a colorable Equal

1  Protection claim.

2          The denial of this claim by the California Court of Appeal was not an

3  unreasonable application of clearly established Supreme Court authority.   Accordingly, this claim

4  should be denied.

5          F.  Claim E

6          Petitioner alleges that his convictions violate the Ex Post Facto Clause, double

7  jeopardy as well as his right to due process.   The California Court of Appeal denied petitioner's

8  claim alleging violation of the Ex Post Facto Clause for the reasons stated herein:

> Defendant claims his punishment violates the ex post facto clause of the state and federal Constitutions because the offenses that required him to register occurred prior to the time section 290 was raised from a misdemeanor to a felony. He claims he can only be convicted of a misdemeanor. We reject this claim.
>
> Article I, section 10, clause 1 of the federal Constitution and article I, section 9 of the California Constitution prohibit the state from passing an ex post facto law. The California provision is analyzed in the same manner as its federal counterpart. (People v. Grant (1999) 20 Cal.4th 150, 158.)
>
> In Collins v. Youngblood (1990) 497 U.S. 37, 43, the high court defined the prohibition of the ex post facto clause in simple terms: "Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts."  "The proper inquiry post-Collins is not whether the law results in a disadvantage to the person affected by it but rather whether it increases the penalty by which a crime is punished."  (People v. Fioretti (1997) 54 Cal.App.4th 1209, 1213.)
>
> Defendant argues because his underlying registrable offense occurred before the violation of the registration requirement was raised from a misdemeanor to a felony in 1995, convicting and punishing him for a felony violates the ex post facto clause. We reject this argument.
>
> When the Legislature made the violation of the registration requirement a felony, it did not retroactively alter the definition of any crimes or increase the punishment for criminal acts that were already completed. (Collins v. Youngblood, supra, 497 U.S. at p. 43.) A person violates the registration law on the date when the obligation to register arises and also, each and every day after that the defendant fails to satisfy the registration requirement. (Wright v. Superior Court (1997) 15 Cal.4th 521, 528.)  Here, defendant was punished for his actions of failing to register in 1999 under the law as it existed in 1999. This simply does not violate the ex post facto clause. (FN9)
>
>> FN9. To the extent defendant argues that the registration requirement itself violates the ex post facto clause, he acknowledges in his reply brief the

23

United States Supreme Court concluded the Alaska registration and notification scheme is civil in nature and nonpunitive. (Smith v. Doe (2003) 538 U.S. 84.  Furthermore, in People v. Castellanos (1999) 21 Cal.4th 785, 795, the California Supreme Court concluded requiring a sex offender to register pursuant to section 290 was not punishment for purposes of ex post facto analysis. (21 Cal.4th at p. 799,[plur. opn. of George, C.J.], Id. at p. 805, [conc. & dis. opn. of Kennard, J.].)

(Respondent's Lodged Document D, attachment, pp. 13-14.)

The 1995 provisions of Cal. Penal Code § 290 which increased the violation of this section from a misdemeanor to a felony applied to petitioner's 1999 violations of that section.  There was no violation of the Ex Post Facto Clause.  The denial of this claim by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority.

With respect to petitioner's additional assertions in Claim E, the California Supreme Court denied petitioner's double jeopardy and due process claims.

The Double Jeopardy Clause of the Fifth Amendment of the Constitution states that: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.  Schiro v. Farley, 510 U.S. 222, 229 (1994).

The Double Jeopardy Clause is inapplicable to the instant case because petitioner has not been twice convicted or punished multiple times for the same offense.  Petitioner's convictions for violating § 290 are distinct and separate from his conviction for the crimes that led to the requirement that he register as a sex offender.

Petitioner also claims that his failure to receive notice that a violation of Cal. Penal Code § 290 had been raised from a misdemeanor to a felony violated his right to due process.

Due process requires that a defendant be given notice of the penal consequences

24

of his conduct.  "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids."  Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939).  "[A] defendant is deemed to have fair notice of an offense if a reasonable person of ordinary intelligence would understand that his or her conduct is prohibited by the rule in question."  United States v. Hogue, 752 F.2d 1503, 1504 (9th Cir. 1985).

When it was amended in 1995, California Penal Code § 290 clearly stated that a violation of that section was a felony.  A person of ordinary intelligence reasonably could be expected to have understood, upon enactment of the 1995 amendment, that violating § 290 was a felony.  Petitioner's due process claim is without merit.

After independently reviewing the record, the undersigned finds that the denial of petitioner's double jeopardy and due process claims by the California Supreme Court was not an unreasonable application of clearly established Supreme Court authority.  Accordingly, those claims should be denied.

G.  Claim G

Petitioner alleges that the trial court abused his discretion by failing to strike one or more of his prior convictions.  The California Court of Appeal denied this claim for the reasons stated herein:

> Defendant argues the trial court abused its discretion in failing to dismiss one or more of defendant's prior serious felony convictions under People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 529-530.  We disagree.
>
> The People assert we must summarily reject defendant's claim because review is generally unavailable when a trial court declines to dismiss a prior conviction, citing People v. Benevides (1998) 64 Cal.App.4th 728, 733-734.  We decline to follow Benevides. We believe the better-reasoned analysis is that of People v. Myers (1999) 69 Cal.App.4th 305, 309, which concluded that a trial court's denial of a motion to dismiss a prior conviction is reviewable under the deferential abuse of discretion standard. This also comports with People v. Romero, supra, where the court stated, "A court's discretion to strike prior felony conviction allegations in furtherance of justice is limited. Its exercise must proceed in strict compliance with section 1385(a), and is subject to review for abuse." (13 Cal.4th at p. 530, italics added.)

In determining whether to strike a prior, the trial court must consider "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (People v. Williams (1998) 17 Cal.4th 148, 161.)

"In passing on the trial court's reasons for dismissing a strike, the appellate court must determine whether the trial court's ruling was an abuse of discretion. 'This standard is deferential. [Citations.] But it is not empty. Although variously phrased in various decisions [citation], it asks in substance whether the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts.'" (People v. Strong (2001) 87 Cal.App.4th 328, 336, fns. omitted.)

In support of his argument, defendant relies primarily on People v. Cluff (2001) 87 Cal.App.4th 991 (Cluff). For the reasons that follow, defendant's reliance on Cluff is misplaced.

In Cluff, the defendant was convicted of failing to register as a sex offender because he had failed to comply with the requirement that he annually update his registration within five days of his birthday. (Cluff, supra, 87 Cal.App.4th at p. 994; § 290, subd. (a)(1)(D).) The trial court denied his motion to strike one or more of the prior conviction allegations, finding there had been "obfuscation" on the defendant's part that went  "beyond the technical 290 violation." (Cluff, at p. 1001.)  The court then imposed a third strike sentence of 25 years to life. (Id. at p. 994.)

On appeal, Division Three of the Court of Appeal, First Appellate District concluded the trial court abused its discretion in denying defendant's motion to strike and remanded for a new hearing. (Cluff, supra, 87 Cal.App.4th at p. 994.) The appellate court pointed out that "[a] trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence." (Id. at p. 998.) The appellate court then went on to conclude that the trial court's "critical finding" of "obfuscation" by the defendant was not supported by substantial evidence. (Id. at pp. 1002-1004.) The appellate court emphasized that the case before it "involves the most technical violation of the section 290 registration requirement we have seen." (Id. at p. 994, 105.) The defendant had been released from prison in 1990 and had properly registered a number of times over the next five years. (Id. at pp. 994-995.) In 1995 and 1996, the defendant failed to update his registration around his birthday - a requirement that became effective on January 1, 1995. (Id. at p. 995.) Nonetheless, he continued to reside at his last registered address, and the police were able to contact him there in October 1997. (Ibid.) When he reported to a requested meeting with the police, he was arrested for violating section 290 by failing to update his registration around his birthday. (Id. at pp. 995-996.)

Significantly, the appellate court in Cluff did not hold that the defendant was entitled to have one or more of his prior convictions stricken as a matter of law under the facts before the court. Instead, the court simply held the trial court's "critical finding" of "obfuscation" was not supported by substantial evidence and

thus a new hearing was required. (Cluff, supra, 87 Cal.App.4th at pp. 1002-1004.) The appellate court directed the trial court to "keep in mind that 'a decision to strike a prior is to be an individualized one based on the particular aspects of the current offenses for which the defendant has been convicted and on the defendant's own history and personal circumstances. This approach allows the court to perform its obligation to tailor a given sentence to suit the individual defendant. But the court must also be mindful of the sentencing scheme within which it exercises its authority. In deciding to strike a prior, a sentencing court is concluding that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme.' [Citation.]" (Id. at p. 1004.)

Here, in denying defendant's Romero motion, the court stated, "I would need to be able to articulate and have entered in the minutes something that the Court is satisfied[,] not just [something that would] motivate[ ] me, but would also motivate a reasonable judge to view [defendant's] overall conduct, his background, the nature of these offenses and all the other individual characteristics that come into it and weigh that against what from the Court's standpoint is a pretty clear legislative determination that despite the defense's position, that [defendant] is no real harm with anybody, with his background is a continuing threat to society." The court noted that defendant was charged and convicted of a felony, not a misdemeanor/felony wobbler crime. Defendant tried to conceal his true identity and misled law enforcement. The court concluded this was not a proper case to strike any of defendant's prior convictions.

The record thus demonstrates the trial court applied the correct legal standard to the facts of this case. It also supports the court's conclusion that defendant did not fall outside the spirit of the three strikes law.

Defendant's current crime shares none of the characteristics of the technical violation found in Cluff, supra, 87 Cal.App.4th 991. Defendant was not living at the same address of his last registration. Instead, defendant appears to have been changing addresses regularly in the months he evaded the registration requirement. Defendant vacated his last registered address in February 1999 - four and one-half months before he was arrested in July. Defendant lived at more than two addresses between February and July 1999, including one in West Sacramento and at another address "around the corner" from where he was arrested. He was also apparently homeless during this time. It appears fortuitous that the officer located defendant at a neighboring apartment from his last registered address.

When confronted by the deputy, defendant lied about his identity, provided a false Social Security number and attempted to pass off obviously phony stolen identity documents. In short, the evidence here supported the contention defendant was intent on evading law enforcement and deceiving them. Defendant was flaunting the express purpose of the sex offender registration law "to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future." (Barrows v. Municipal Court (1970) 1 Cal.3d 821, 825-826.)

27

Defendant's prior record is filled with violent and serious felonies. In 1981, defendant was convicted of breaking and entering a residence in Maryland. In 1982, he was convicted of forcible rape and forcible oral copulation. (§§ 261, subd. (a)(2), 288a, subd. (c) .) In that attack, defendant engaged in multiple acts of forced intercourse and oral copulation. Defendant threatened the life of his victim. In 1990, defendant and an accomplice robbed a Lyon's restaurant at gunpoint. (§ 211.) In 1999, defendant was convicted of misdemeanor cohabitant abuse. (§ 273.5)

Defendant's background and characteristics do not dictate a result that the trial court abused its discretion in declining to strike his prior convictions. Defendant is a 40-year-old man. He is transient and has never married. He has a single adult daughter who lives out of state. Defendant reported having dropped out of high school in ninth grade and has no further formal education. When he was out of custody, defendant was collecting Social Security income benefits and had no discernable employment. Further, defendant was using methamphetamine while not incarcerated. While in jail, defendant had been the subject of 11 disciplinary write-ups. While defendant's mental impairments do mitigate the nature of defendant's conduct somewhat, this factor standing alone does not overcome the other factors that dictate the trial court did not abuse its discretion in refusing to strike defendant's prior convictions.

(Respondent's Lodged Document D, attachment, pp. 15-20.)

In reviewing a habeas corpus application, this Court is limited to deciding whether a conviction violates the Constitution, laws or treaties of the United States.  28 U.S.C. § 2254(a). Habeas relief does not lie for errors of state law.  Estelle v. McGuire, 502 U.S. 62, 67 (1991). "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing law does not justify federal habeas relief."  Christian v. Rhode, 41 F.3d 461, 469 (9th Cir.1994).

As noted by the California Court of Appeal, after carefully reviewing petitioner's history, the trial court chose not to strike his prior convictions.  Petitioner has failed to demonstrate that the trial court's denial of his Romero motion was fundamentally unfair.  See Timberlake v. Campbell, No. CV 06-4884 PSG (AGR), 2009 WL 2523722 (C.D.Cal. Aug.13, 2009) (rejecting same claim); Williams v. Martel, No. 2: 08-cv-1024 (JKS), 2010 WL 2011574 (E.D. Cal. May 19, 2010) (rejecting same claim).

The denial of this claim by the California Court of Appeal was not an

unreasonable application of clearly established Supreme Court authority.  Accordingly, this claim should be denied.

H.  Claim F

Petitioner alleges that his sentence violates the Eighth Amendment.  Petitioner was convicted of violating former Cal. Penal Code § 290(a)(1)(c) which at the time of his conviction provided,

> Beginning on his or her first birthday following registration or change of address, the person shall be required to register annually, within five working days of his or her birthday, to update his or her registration with the entities described in subparagraph (A), including verifying his or her name and address, or temporary location, on a form as may be required by the Department of Justice.

Former Cal. Penal Code § 290(a)(1)(c).

The amended information specifically charged petitioner with failing to register within five working days of his birthday.  (CT at 36.)  Petitioner was also convicted of violating former Cal. Penal Code § 290(f) which provided that everyone who is required to register as a sex offender who changes their address must inform law enforcement of their new address within five working days.

Petitioner was sentenced to 25 years to life for both convictions, but his sentence for violating § 290(a)(1)(c) was stayed.  (RT at 178.)

The California Court of Appeal denied petitioner's Eighth Amendment claim for the reasons stated herein:

> Cruel and Unusual Punishment
>
> Defendant claims his punishment of 26 years to life is cruel and unusual under both the state and federal Constitutions. We disagree.
>
> California Constitutional Standard
>
> A punishment may violate the California Constitution, if, although not "cruel and unusual" in its method, the punishment "is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (In re Lynch (1972) 8 Cal.3d 410, 424, fn. omitted.) In re Lynch identified three techniques used to administer this rule: (1) examining the nature of the offense and the offender; (2) comparing the punishment with more

serious crimes in the same jurisdiction; and (3) comparing the punishment with the penalty for the same offense in different jurisdictions. (Id. at pp. 425-427.) Defendant focuses on the first two techniques.

"Regarding the offense, we should evaluate 'the totality of the circumstances surrounding the commission of the offense in the case at bar, including such factors as its motive, the way it was committed, the extent of the defendant's involvement, and the consequences of his acts.' [Citation.] We also focus on the particular offender's 'individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind.'" (People v. Martinez (1999) 71 Cal.App.4th 1502, 1510.)  Here, consideration of the offenses and the offender demonstrates defendant's punishment does not shock the conscience or offend fundamental notions of human dignity. (In re Lynch, supra, 8 Cal.3d at p. 424)

Turning to the nature of this offense, we have already concluded it is not simply a "technical" violation of the registration law.  (See section III, supra.) Rather, this defendant purposefully evaded his obligations to register. To the extend defendant argues his mental state prevented him from registering, the trial court heard the defendant in the context of numerous Marsden motions and received briefing from defendant in the context of this case. The court concluded on the record despite defendant's attempts to claim he was confused, "it's clear to me that even if he says he is confused, he has a very accurate understanding of what's going on."

Turning to the nature of the offender, defendant is a 40-year-old man, not a youth. His personal characteristics also do not undermine the penalty imposed in this case. (See part III, supra.) He has no apparent support of his family or friends. He has limited formal education and no employment.

Moreover, a review of defendant's criminal record does not advance defendant's argument his sentence is unconstitutional. (See part III, supra.) Considering the nature of the offender and his current offense, we conclude defendant's recidivism justifies lengthy incarceration. (See People v. Barrera (1999) 70 Cal.App.4th 541, 544-545 [25 years to life for check forgery with two prior robbery convictions]; People v. Goodwin (1997) 59 Cal.App.4th 1084, 1086 [25 years to life for shoplifting and petty theft with a prior with two prior burglaries].)

Defendant's attempt to compare his sentence with the punishment imposed for other offenses, specifically second degree murder, mayhem, manslaughter, rape, and sexual assault of a minor, is not persuasive. He is not subject to a sentence of 25 years to life solely because of his current offense, but also because of his recidivist behavior, complete with its serious prior violent felonies. (People v. Kinsey (1995) 40 Cal.App.4th 1621, 1630.) (FN10)  The more accurate comparison would involve punishment for similar felonies following the accumulation of two prior "strike" convictions. Defendant's sentence is not so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.

     FN10. Defendant raises the specter of double jeopardy in his opening brief, only to conclude in his reply brief "[t]he double jeopardy was

mentioned as a policy factor arguing for disproportionate sentencing." To the extent this argument is raised, we reject it for the reasons stated in People v. White Eagle (1996) 48 Cal.App.4th 1511, 1519-1520. "Recidivist statutes do not impose a second punishment for the first offense in violation of the double jeopardy clause of the United States Constitution." (Id. at p. 1520.)

Federal Constitutional Standard

Defendant fares no better under the federal standard.

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. Strict proportionality between crime and punishment is not required, however. " 'Rather, [the Eighth Amendment] forbids only extreme sentences that are "grossly disproportionate" to the crime.'" (People v. Cartwright (1995) 39 Cal.App.4th 1123, 1135.)

Defendant relies on Solem v. Helm (1983) 463 U.S. 277, and Harmelin v. Michigan (1991) 501 U.S. 957, 1001. In People v. Crooks (1997) 55 Cal.App.4th 797, 805-806, we analyzed Solem and Harmelin. We rejected that defendant's claim that his 25-year-to-life sentence for a rape committed during a burglary was cruel and unusual punishment. (55 Cal.App.4th at pp. 805-806.) We noted: "[i]n Solem, the court found unconstitutional a life sentence without the possibility of parole for a seventh nonviolent felony. A bare majority of the court held '... a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (I) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.' [Citation.]" (Id. at p. 805.) We concluded that "Solem is weakened by Harmelin v. Michigan (1991) 501 U.S. 957, in which a life sentence without possibility of parole for possessing 672 grams of cocaine was upheld." (Ibid.) In Harmelin, seven justices supported a proportionality review but only four favored application of all three factors set forth in Solem. (People v. Crooks, supra, 55 Cal.App.4th at pp. 805-806.) We also noted "[t]he defendant in Harmelin was lawfully sentenced to life without parole (LWOP) for possessing a large quantity of drugs. Defendant here, a forcible rapist, received a lesser sentence." (Id. at p. 806.) We concluded "Defendant's sentence is not 'grossly disproportionate' to defendant's more serious crimes." (Ibid.)

More recently, the Supreme Court of the United States has upheld statutory schemes that result in life imprisonment for recidivists upon a third conviction for a nonviolent felony in the face of challenges that such sentences violate the federal constitutional prohibition against cruel and unusual punishment. (See Ewing v. California (2003) 538 U.S. 11 [25-years-to-life sentence under three strikes law for theft of three golf clubs worth $399 apiece]; Lockyer v. Andrade (2003) 538 U.S. 63 [two consecutive terms of 25 years to life for two separate thefts of less than $100 worth of videotapes].)

In this case, as we discussed in connection with his California constitutional claim, defendant's sentence is not grossly disproportionate to the crime for which he is being punished. As a result, his Eighth Amendment claim fails.

31

1

2  (Respondent's Lodged Document D, attachment, pp. 21-26.)

3          In Gonzalez v. Duncan, 551 F.3d 875 (9th Cir. 2008), the Ninth Circuit held that

4  the petitioner's sentence of 28 years to life under the Three Strikes Law for failing to update

5  annual sex offender registration within five working days of his birthday in violation of former

6  Cal. Penal Code § 290(a)(1)(D) violated the Eighth Amendment.  At the time of the Gonzalez

7  petitioner's conviction in 2001, § 290(a)(1)(D) provided,

8              Beginning on his or her first birthday following registration or change of address,
             the person shall be required to register annually, within five working days of his
9              or her birthday, to update his or her registration with the entities described in
             subparagraph (A), including, verifying his or her name and address, or temporary
10             location, and place of employment, including the name and address of the
             employer, on a form as may be required by the Department of Justice.

11

12  Former Cal. Penal Code § 290(a)(1)(D).

13          In Gonzalez, the Ninth Circuit reasoned as follows.  The Eighth Amendment

14  prohibits sentences that are disproportionate to the crimes committed.  551 F.3d at 879, citing

15  Solem v. Helm, 463 U.S. 277, 284 (1983).  A court examines three objective factors when

16  considering whether a sentence is disproportionate.  Id. at 880.  First, a court considers the

17  gravity of the offense and the harshness of the penalty.  Id., citing Solem v. Helm, 463 U.S. at

18  290-91.  Second, a court compares the sentences imposed on other criminals in the same

19  jurisdiction.  Id., citing Solem v. Helm, 463 U.S. at 291.  Third, the court compares the sentences

20  imposed for commission of the same crime in other jurisdictions.  Id., citing Solem v. Helm, 463

21  U.S. at 291.

22          Applying the factors set forth above to the petitioner's conviction for violating

23  former § 290(a)(1)(D), the Ninth Circuit in Gonzalez noted that the purpose of California's sex

24  registration law is to prevent recidivism by sex offenders by making sure they are "'available for

25  police surveillance.'"  Id. at 884, quoting Wright v. Superior Court, 15 Cal.4th 521 (1997).  The

26  Ninth Circuit went on to find that the annual registration requirement of former § 290(a)(1)(D)

1   was a technical violation of registration requirement of Cal. Penal Code § 290.  Id. at 884-85.

2   "Annual registration is merely a 'backup measure to ensure that authorities have current accurate

3   information.'"  Id., quoting People v. Carmony, 127 Cal.App.4th 1066 (2005).

4          Looking at the facts of the case in Gonzalez, the Ninth Circuit found no harm

5   resulting from Gonzalez's failure to comply with the annual registration requirement.  Id. at 884.

6   Gonzalez had updated his registration nine months before and three months after his birthday and

7   he remained at his last address throughout the time period.  Id.  "There is nothing in the record

8   remotely indicating that Gonzalez's failure to reregister the same address a third time in the same

9   twelve month period could have interfered with the ability of police to monitor his activities."

10  Id.  Gonzalez was readily available for police surveillance.  Id.

11         In discussing the gravity of the offense, the Ninth Circuit contrasted former §

12  290(a)(1)(D) with former § 290(a)(1)(A)'s requirement that sex offenders register any change of

13  address.  Id. at 884.  The requirement that sex offenders provide notice of change of address

14  "relates directly to the state's interest in ensuring that it knows the whereabouts of its sex

15  offenders."  Id.

16         Turning to the severity of the penalty, i.e. 28 years to life, the Ninth Circuit noted

17  that a defendant with no prior strikes who violated that section received only a prison sentence of

18  between sixteen months and three years.  Id. at 886.  "In comparison to the passive, harmless, and

19  technical violation that triggered Gonzalez's sentence, 'the severe penalty imposed on

20  [Gonzalez] appears disproportionate to any measure.'"  Id. at 886, quoting Cluff, 105 Cal.Rptr.2d

21  at 87.

22         The Ninth Circuit went on to state that Gonzalez had an extensive criminal history

23  and that incarcerating him for 28 years would prevent him from committing additional felonies.

24  Id. at 886-87.  However, his present offense did not reveal any propensity to recidivate.  Id. at

25  887.  California had instead,

26         imposed an extraordinarily harsh sentence on Gonzalez based on a violation of a

33

> technical regulatory requirement that resulted in no social harm and to which little
> or no moral culpability attaches.  Absent some connection between Gonzalez's
> past violent and sexual offenses, his present regulatory violation, and his
> propensity to recidivate as a violent or sexual offender, we cannot conclude that
> California's interest in deterring and incapacitating recidivist offenders justifies
> the severity of the indeterminate life sentence imposed.

Id. at 887.

The Ninth Circuit went on to compare Gonzalez's sentence with those imposed for other crimes in California and for the same crime in other states and found gross disproportionality.  Id. at 887-888.

Therefore, in this case the undersigned first considers whether petitioner's sentence of 25 years to life for failing to comply with the annual registration requirement violates the Eighth Amendment.  Although petitioner's sentence for this conviction is stayed, he would be entitled to be resentenced for this conviction were the undersigned to find an Eighth Amendment violation.

Former § 290(a)(1)(c), of which petitioner was convicted, is essentially the same as former § 290(a)(1)(D) discussed by the Ninth Circuit in Gonzalez.  In Gonzalez, based on the facts of that case, the Ninth Circuit found a technical violation of § 290.  Accordingly, the undersigned takes a closer looks at the facts of the instant case to determine whether a technical violation occurred.

On July 5, 1999, Deputy Sheriff Hufford responded to a disturbance at 1822 Ethan Way, Apartment 22 in Sacramento.  (RT at 44.)  Petitioner, who was at the apartment, told the Deputy that his name was Sirleaf Flomo.  (RT at 45.)  Petitioner stated that his birthday was February 8, 1964.  (Id.)  Petitioner also recited a social security number.  (RT at 46.)  The officer had a records check performed and the social security number did not belong to Sirleaf Flomo.  (Id.)  At one point, petitioner gave the Deputy an old driver's license that had been mutilated.  (RT at 47.)  A passport picture of petitioner was affixed to it.  (Id.)

Petitioner's birthday is February 22, 1962.  (RT at 88.)  On July 15, 1998,

1    petitioner completed his annual registration, although it was approximately five months late.

2    (RT at 86-87.)  On that date, petitioner reported his address as 1822 Ethan Way, Apartment 23,

3    Sacramento.  (RT at 88.)  The officer who completed petitioner's annual registration in July 1998

4    did not know why it was late.  (RT at 93-94.)  Between July 15, 1998, and July 5, 1999,

5    petitioner did not complete another annual registration update.  (RT at 92.)

6           Petitioner was first ordered to register annually on February 27, 1989.  (RT at

7    101.)  Between February 27, 1989, and July 15, 1998, petitioner provided three annual updates.

8    (RT at 101-02.)  During the same time period, petitioner provided nine changes of address.  (RT

9    at 102.)  After petitioner provided the July 15, 1998 annual update, he did not provide any further

10   notices of change of address.  (RT at 102.)

11          On or around February 15, 1999, petitioner and his mother moved out of the

12   apartment on Ethan Way.  (RT at 56-58.)  In March of 1999, petitioner was living in West

13   Sacramento.  (RT at 66.)

14          In its discussion of whether petitioner's sentence violated the California

15   Constitution, the California Court of Appeal found that petitioner's failure to participate in the

16   annual registration was more than a mere technical violation.  The California Court of Appeal

17   referred to its discussion of petitioner's Romero claim, where it had noted that petitioner lied

18   about his identity when confronted by the deputy and was in possession of stolen identity

19   documents.  "Defendant was flaunting the express purpose of the sex offender registration law

20   'to assure that persons convicted of the crimes enumerated therein shall be readily available for

21   police surveillance at all times . . ..'"  (Respondent's Lodged Document D, attachment, p. 20.)

22   The California Court of Appeal distinguished petitioner's case from the characteristics of the

23   technical violation found in Cluff, 87 Cal.App.4th 991.  As noted above, the Ninth Circuit relied

24   on Cluff in finding the technical violation in Gonzalez.

25          While law enforcement had been lax in enforcing petitioner's annual registration,

26   his failure to participate in his 1999 annual registration interfered with the ability of police to

monitor his activities.  Had petitioner participated in the February 1999 annual registration, which was due shortly after he moved away from the apartment on Ethan Way, law enforcement would have been aware of his new address or, as discussed below, that he had become a transient.

While petitioner's prior offenses occurred in 1981 and 1982, his willingness to lie to the deputy about his identity and his possession of false identification demonstrate a rational relationship between his failure to participate in the annual registration and the probability that he would recidivate.

While petitioner's sentence for failing to participate in the annual registration is harsh, for the reasons discussed above, this sentence does not raise an inference of gross proportionality as did the petitioner's sentence in Gonzalez.  The finding by the California Court of Appeal that petitioner's violation of § 290 was more than merely technical is supported by the record.

Turning to petitioner's conviction for failing to file a notice of change of address, in Gonzalez the Ninth Circuit found that failing to register after a change of address is more than a technical violation of the law.  For the reasons discussed herein, the undersigned finds that petitioner's failure to notify law enforcement of his new address obviously interfered with law enforcement's ability to monitor his activities.  There was clearly a rational relationship between petitioner's failure to provide law enforcement with his new address and the probability that he would recidivate.  For these reasons, petitioner's sentence for failing to provide his new address does not raise an inference of gross proportionality.[5]

---

[5]  Of note, in two unpublished, very brief decisions, the Ninth Circuit recently addressed whether life sentences for violations of Cal. Penal Code § 290 violate the Eighth Amendment.  In Richardson v. Vasquez, No. 08-55201, 2010 WL 892862 (9th Cir. March 12, 2010), the Ninth Circuit found that a sentence of 28 years to life for failing to register either a change of address or a new second address in violation of California Penal Code § 290(a)(1)(A) or (B) violated the Eighth Amendment.  The Ninth Circuit's decision in Richardson did not include a discussion of the facts of that case.

1          The denial of petitioner's claim alleging that his sentence violates the Eighth

2   Amendment by the California Court of Appeal was not an unreasonable application of clearly

3   established Supreme Court authority.  Accordingly, this claim should be denied.

4          I.  Claims H, I, J

5          In claims H, I and J petitioner alleges that he received ineffective assistance of

6   counsel.

7          *Legal Standard*

8          The test for demonstrating ineffective assistance of counsel is set forth in

9   Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering

10  all the circumstances, counsel's performance fell below an objective standard of reasonableness.

11  Id. at 688.  To this end, the petitioner must identify the acts or omissions that are alleged not to

12  have been the result of reasonable professional judgment.  Id. at 690.  The federal court must then

13  determine whether in light of all the circumstances, the identified acts or omissions were outside

14  the wide range of professional competent assistance.  Id.  "We strongly presume that counsel's

15  conduct was within the wide range of reasonable assistance, and that he exercised acceptable

16  professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702

17  _____

18          Similarly, in Mack v. Dexter, No. 07-56392, 2010 WL 547600 (9th Cir. Feb. 16, 2010), the Ninth Circuit found that a petitioner's sentence of 27 years to life for a technical violation of the requirement that he update his registration on his birthday, in violation of

19  California Penal Code § 290, violated the Eighth Amendment.  The Ninth Circuit's opinion in Mack also did not include a discussion of the facts of that case.

20

21          As discussed above, in  Gonzalez, the Ninth Circuit found that the requirement that sex offenders provide notice of change of address "relates directly to the state's interest in ensuring that it knows the whereabouts of its sex offenders."  Gonzalez, 551 F.3d at 884.  The

22  undersigned applies the reasoning of Gonzalez in concluding that petitioner's life sentence for failing to notify the sheriff of his change of address as a sex offender, based on the facts of this

23  case, did not violate the Eighth Amendment.  Petitioner's failure to update his registration within five days of his birthday was more than a mere technical violation of that statute.  As discussed

24  above, petitioner went to great lengths to try and mislead law enforcement about his identity. Accordingly, this court is persuaded by the reasoning in Gonzalez that petitioner's sentence for

25  violating § 290(a)(1)(c) does not violate the Eighth Amendment.

26

(9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice.  Strickland, 466 U.S. at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.

In extraordinary cases, ineffective assistance of counsel claims are evaluated based on a fundamental fairness standard.  Williams v. Taylor , 529 U.S. 362, 391-93 (2000) (citing Lockhart v. Fretwell, 506 U.S. 364 (1993)).

The Supreme Court has emphasized the importance of giving deference to trial counsel's decisions, especially in the AEDPA context:

> In Strickland we said that "[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689.  Thus, even when a court is presented with an ineffective-assistance claim not subject to § 2254(d)(1) deference, a [petitioner] must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).
>
> For [petitioner] to succeed, however, he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly.  See Williams, supra, at 411.[6] Rather, he must show that the [ ]Court of Appeals applied Strickland to the facts of his case in an objectively unreasonable manner.

Bell v. Cone, 535 U.S. 685, 698-99 (2002).

*Claim H*

Petitioner alleges that counsel was ineffective for failing to call Doctor Miller as a

---

[6] This internal citation should be corrected to Williams v. Kaiser, 323 U.S. 471, 477 (1945).

1   witness at trial.  Petitioner alleges that Dr. Miller would have testified that petitioner did not

2   willfully fail to comply with California Penal Code § 290.

3           California Penal Code § 290 requires that a defendant actually know of the duty to

4   act.  People v. Garcia, 25 Cal.4th 744, 752 (2001).  A defendant is guilty only if he "willfully

5   violates" the registration or notification provisions of § 290.  Id.  "The willfulness element of the

6   offense may be negated by evidence that an involuntary condition – physical or mental,

7   temporary or permanent – deprived a defendant of actual knowledge of his duty" to register.

8   People v. Sorden, 36 Cal.4th 65, 69 (2005).  However, "[o]nly the most disabling of conditions"

9   would qualify under this standard, such as severe Alzheimer's disease or general amnesia

10  inducted by severe trauma.  Id.

11          In his 2002 report Dr. Miller stated that petitioner had previously told him that a

12  friend had told him that there was a warrant out for his arrest for failing to register as a sex

13  offender.  (Dkt. No. 57, p. 48 of 112.)  Petitioner's girlfriend gave him identification belonging to

14  someone else that he then altered, at her suggestion, by placing his passport photo on the ID.  (Id.

15  at 49.)  Petitioner told Dr. Miller that he was aware of the process of going to the police

16  department and signing an updated form to register but that it was " not on [his] mind to register

17  at that time."  (Id.)  He was in a "state of mind and couldn't think."  (Id.)

18          In his declaration attached to the answer, counsel states that he made a tactical

19  decision not to present Dr. Miller as a defense witness at trial because under cross-examination,

20  he may have testified that petitioner was aware of the processes of going to the police department

21  signing an updated form to register as a sex offender.  (Dkt. No. 44-1, ¶ 13.)

22          Dr. Miller's report does not demonstrate that petitioner was unaware of the duty to

23  register or had an involuntary condition that deprived him of the knowledge of his duty.  In fact,

24  Dr. Miller's report indicates that petitioner was aware of his duty to register.  Calling Dr. Miller

25  may well have harmed petitioner's defense.  For these reasons, counsel was not ineffective for

26  failing to call Dr. Miller as a witness.

1    The denial of this claim by the Superior Court was not an unreasonable

2 application of clearly established Supreme Court authority.  Accordingly, this claim should be

3 denied.

4    *Claim I*

5    Petitioner alleges that counsel was ineffective for failing to call no witnesses at his

6 sentencing hearing.  Petitioner alleges that trial counsel should have called his mother, Eloise

7 Holland, to testify that in the past the police would call her so that she could remind petitioner to

8 register.  Petitioner also alleges that trial counsel should have called mental health counselor Lisa

9 Stone to testify that when petitioner lived at the mental health program facility, she would take

10 him to the police station to register.  Finally, petitioner alleges that trial counsel should have

11 called Dr. Miller to testify that at the time he was supposed to register, petitioner was homeless

12 and not taking his psychotropic medication.

13    The record indicates that trial counsel brought the matters alleged by petitioner to

14 the trial court's attention.  On November 30, 2000, trial counsel filed a motion to strike

15 petitioner's prior convictions.  (CT at 53.)  In this motion, trial counsel argued that petitioner was

16 living on the streets, mentally disabled and not taking his medications at the time he failed to

17 register.  (CT at 54.)  In support of this report, trial counsel referred to Dr. Miller's 1999 report of

18 his evaluation of petitioner attached to the motion.  (CT at 56-58.)  Counsel also argued that in

19 previous years, petitioner had relied on his mother or caretakers to take him down to register.

20 (CT at 54.)  The trial court did not rule on this motion because petitioner was committed to the

21 state hospital.  (RT Volume I, pp. 17-29.)

22    On February 7, 2002, trial counsel filed another motion to strike petitioner's prior

23 convictions.  (CT at 61.)  This motion raised the same arguments as the previous motion (CT at

24 63.)  After petitioner was convicted but before sentencing, petitioner himself filed an addendum

25 to the motion to strike.  (CT at 71.)

26    On March 11, 2002, trial counsel filed a "Statement in Mitigation . . .

1  Supplemental Points and Authorities on 'Romero Motion' for Judgment Sentence."  (CT at 80.)

2  In support of this motion, trial counsel attached Dr. Miller's updated 2002 report of his

3  examination of petitioner.  (CT at 84-90.)

4  　　　　　On March 22, 2002, petitioner complained that counsel's <u>Romero</u> motion was not

5  adequate.  (RT at 145-55.)  Petitioner told the court that his mother would testify about the "type

6  of person I am, the support that I have from her and the rest of my family."  (RT at 152.)  At this

7  hearing, counsel addressed petitioner's complaint that he had not talked to his mother:

8  　　　　　　　And with respect to his mother, she had contacted me probably more than a year
　　　　　　　and a half ago.  She's quite aged and disabled at this time.  She cannot even have
9  　　　　　　　transportation come down to the courthouse.  At that point in time, Mr. Crosby
　　　　　　　did not even know where she was living and/or any other vital information.
10 　　　　　　　Again, I don't believe that lady has anything to add to the court.

11 (RT at 149.)

12 　　　　　At the <u>Romero</u> hearing, trial counsel argued that Dr. Miller's report clearly

13 explained why petitioner behaved as he did.  (RT at 168-69.)  Counsel argued that Dr. Miller's

14 report showed that petitioner had mental confusion.  (RT at 169.)  Counsel argued that Dr. Miller

15 found that petitioner's behavior was consistent with someone just concentrating on their survival.

16 (RT at 170.)  The trial court rejected these arguments and declined to strike any of petitioner's

17 prior convictions.

18 　　　　　In his declaration attached to the answer, trial counsel states that he made the

19 tactical decision not to present Dr. Miller, Eloise Holland and mental health counselor Lisa Stone

20 as witnesses at the sentencing hearing because all mitigating information from those witnesses

21 was before the court in the documentary evidence, and trial counsel did not want the prosecutor

22 to cross-examine the witnesses and elicit unfavorable aggravating information regarding

23 petitioner.  (Dkt. No. 44-1, ¶ 14.)

24 　　　　　In essence, petitioner is claiming that trial counsel should have called petitioner's

25 mother, Lisa Stone and Dr. Miller to testify at his sentencing hearing that he was unaware of the

26 requirement that he register and/or incapable of doing it on his own.  Unfortunately, the person

1    most qualified to testify regarding this matter, Dr. Miller, could not render such an opinion.  As

2    noted above, in his report Dr. Miller stated that petitioner was aware of the registration

3    requirement and how to do it but was not in the "state of mind" to do it in 1999.  None of these

4    witnesses could have testified that petitioner had a disabling condition, such as Alzheimer's, that

5    prevented him from being aware of the requirement.  People v. Sorden, 36 Cal.4th 65, 69 (2005).

6            At the Romero hearing, the trial court rejected trial counsel's argument, based on

7    Dr. Miller's report, that petitioner was unable to register due to his mental problems:

8            It seems to me that the – misrepresenting his identification affirmatively and
             having – even if it was poorly made, phoney I.D. cards is not the kind of thing that
9            the person does if they're willing to be compliant, yet what could possibly – other
             than a desire to not be under those constraints which the Legislature has said we
10           want these people to be under – absent, you know, just flat out desire to not be
             under those constraints, why would a person be wanting to affirmatively
11           misrepresent their identification?

12   (RT at 170.)

13           It is very unlikely that the trial court would have chosen to strike one of

14   petitioner's prior convictions had either Dr. Miller, petitioner's mother or Lisa Stone testified at

15   the sentencing hearing.  Based on petitioner's willingness to misrepresent his identification in an

16   attempt to avoid arrest, and also the information in Dr. Miller's report that petitioner knew of the

17   registration requirements, it is highly unlikely that the outcome of the Romero hearing would

18   have been different had these witnesses been called.

19           In addition, counsel had valid tactical reasons for not calling these persons as

20   witnesses.  As noted in his declaration, unfavorable information could have been elicited from

21   them during cross-examination.

22           For the reasons discussed above, trial counsel was not ineffective for failing to

23   call Dr. Miller, petitioner's mother and Lisa Stone as witnesses at the sentencing hearing.  The

24   denial of this claim by the Superior Court was not an unreasonable application of clearly

25   established Supreme Court authority.  Accordingly, this claim should be denied.

26   ////

1    *Claim J*

2        Petitioner alleges that counsel was ineffective for failing to adequately defend him

3    regarding his conviction for California Penal Code § 290(g)(2).  Petitioner alleges that counsel

4    failed to 1) make an opening statement; 2) failed to preserve available affirmative defenses; 3)

5    failed to make a closing argument; 4) failed to subject the prosecutor's case to meaningful

6    adverse testing.

7        The decision whether to make an opening statement is typically a strategic

8    decision that cannot form the basis of an ineffective assistance claim.  United States v.

9    Rodriguez-Ramirez, 777 F.2d 454, 458 (9th Cir. 1985) ("The timing of an opening statement,

10   and even the decision whether to make one at all, is ordinarily a mere matter of trial tactics and in

11   such cases will not constitute the incompetence basis for a claim of ineffective assistance of

12   counsel.").  In any event, petitioner does not explain with any specificity how the lack of an

13   opening statement prejudiced his defense.

14       While petitioner argues that his counsel failed to make a closing argument, the

15   record reflects that trial counsel did make an argument to the court after the prosecutor's closing

16   argument.  (RT at 124-26).  Accordingly, this claim is without merit.

17       Petitioner's claims that counsel failed to preserve affirmative defenses and subject

18   the prosecutor's case to meaningful adverse testing are vague and conclusory.  Petitioner does not

19   describe the affirmative defenses or allege in any detail how counsel failed to subject the

20   prosecutor's case to meaningful adverse testing.  These claims are too vague, conclusory, and

21   speculative to justify a habeas remedy.  James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) (rejecting

22   ineffective assistance of counsel claim and stating, "[c]onclusory allegations which are not

23   supported by a statement of specific facts do not warrant habeas relief").

24       After independently reviewing the record, the undersigned finds that the denial of

25   this claim by the California Supreme Court was not an unreasonable application of clearly

26   established Supreme Court authority.  Accordingly, this claim should be denied.

J.  Claim J

Within claim J, petitioner also argues that there was insufficient evidence to support his conviction for failing to provide notice of his new address because he was homeless at the time of his crimes.

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Jackson established a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence.  U.S. v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010).  First, the court considers the evidence at trial in the light most favorable to the prosecution.  Id., citing Jackson, 443 U.S. at 319.  "'[W]hen faced with a record of historical facts that supports conflicting inferences," a reviewing court 'must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  Id., quoting Jackson, 443 U.S. at 326.

"Second, after viewing the evidence in the light most favorable to the prosecution, a reviewing court must determine whether this evidence so viewed is adequate to allow 'any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'"  Id., quoting Jackson, 443 U.S. at 319.  "At this second step, we must reverse the verdict if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt."  Id.

Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury should have arrived at its conclusion, the federal court must also determine that the state appellate court could not have affirmed the verdict under the Jackson standard in the absence of

1    an unreasonable determination.  <u>Juan H. v. Allen</u>, 408 F.3d 1262 (9th Cir. 2005).

2    Former California Penal Code § 290(f) provided, in relevant part,

3    If a person who is required to register pursuant to this section changes his or her
     residence address or location, whether within the jurisdiction in which he or she is
4    currently registered or to a new address inside or outside the state, the person shall
     inform, in writing within five working days, the law enforcement agency or
5    agencies with which he or she last registered of the new address or location.

6    Former Cal. Penal Code § 290(f).

7    The amended information charged petitioner with violating former § 290(f) on or

8    about April 7, 1999.  (CT at 35.)

9    Petitioner apparently argues that because he became homeless after leaving the

10   Ethan Way apartment in February 1999, he could not comply with former § 290(f) because he

11   did not have a new address.

12   At trial, the following evidence was presented regarding petitioner's residence

13   status.  On July 13, 1998, petitioner informed law enforcement that he was living at 1822 Ethan

14   Way, Apartment 23 in Sacramento.  (RT at 88.)  Stephanie Satto, the apartment manager for the

15   complex at 1822 Ethan Way, testified that petitioner and his mother vacated their apartment at

16   that address by February 15, 1999.  (RT at 58.)  Deputy Hufford testified that when he arrested

17   petitioner in July 1999, petitioner told him that he was living at 2045 Wyda Way, Apartment 1 in

18   Sacramento.  (RT at 53.)  April Lowe, petitioner's friend, testified that on or around March 30,

19   1999, petitioner told her that he had been staying in West Sacramento for the past two weeks.

20   (RT at 66, 78.)  On cross-examination, Lowe also testified that she believed that between

21   February and July 1999 petitioner was living on the streets.  (RT at 70.)

22   In <u>People v. North</u>, 112 Cal.App.4th 621 (2003), the California Court of Appeal

23   held that the requirement of former section 290 that transient offenders are required to provide

24   authorities with statutorily unspecified 'locations' as their address is void for vagueness.  112

25   Cal.App.4th at 635.  However, the court in <u>North</u> also found that the registration requirement that

26   an offender who changed his status from resident to transient, or transient to resident, was not

1   unconstitutionally vague.  Id.

2       The evidence from trial shows that petitioner was living at the apartment on Ethan

3   Way until February 1999.  Pursuant to North, if petitioner became homeless after leaving the

4   Ethan Way apartment, he may not have been required to provide authorities with a new address

5   each time he slept in a new location.  However, he was required by California Penal Code § 290

6   to inform authorities of either his new address or change in status to transient when he left the

7   Ethan Way apartment.  In this case, it appears that petitioner resided at addresses of which he

8   never informed law enforcement.  Nevertheless, even assuming petitioner's allegations as true,

9   on April 7, 1999, as charged in the amended information, he was not in compliance with former

10   § 290(f) as he had not notified law enforcement that he was now homeless.

11       Petitioner may also argue that there was insufficient evidence to support his

12   conviction because Dr. Miller's report states that he was homeless at the time of the offense.

13   However, Dr. Miller's report was not presented as evidence at the trial.  In considering a claim

14   for insufficiency of the evidence, a court considers only evidence that was presented to the jury.

15   See McDaniel v. Brown, 130 S.Ct. 665, 671-72 (2010).

16       For the reasons discussed above, the undersigned finds that there was sufficient

17   evidence to support petitioner's conviction for violating former § 290(f).  The denial of this claim

18   by the California Supreme Court was not an unreasonable application of clearly established

19   Supreme Court authority.  Accordingly, this claim should be denied.

20       It appears that petitioner also may be arguing that trial counsel was ineffective for

21   failing to present evidence that he was homeless at the time of the offense.  In his September 15,

22   1999, report, Dr. Miller states that petitioner told him that he was living in an apartment with his

23   mother until February 1999:

24       After his release from prison in 1994, he was placed on parole, and, as a registered
        sex offender, he was required to keep law enforcement aware of his place of
25       residence.

26       Mr. Crosby reports that initially, he lived in a residential program through

Transitional Living Services for about a year.  While at TLCS, he had a counselor, Lisa Stone, who assisted him with keeping law enforcement informed as to his whereabouts.  After he completed the training program through TLCS, he then lived in his own apartment from about December of 1997 until February of 1999.  During that time period, law enforcement contacted his mother after he had failed to register and his mother arranged for him to contact law enforcement to fill out the registration forms.  However, in February of 1999, he was excluded from his apartment.  He was homeless and living on the streets.  As a result, he did not have stable or permanent residence and there was no one available to remind him or to assist him with registration as a sexual offender.

Id. at 59-60.

As discussed above, even if petitioner had multiple addresses after he became homeless in February 1999, he still failed to notify law enforcement of his change in status from resident to transient.  For that reason, petitioner was not prejudiced by counsel's failure to admit Dr. Miller's reports or to call Dr. Miller as a witness.  This claim of ineffective assistance of counsel is without merit.

After independently reviewing the record, the undersigned finds that the denial of these claims by the California Supreme Court was not an unreasonable application of clearly established Supreme Court authority.  Accordingly, these claims should be denied.

K.  Claim K

Petitioner alleges that he received ineffective assistance of appellate counsel.  A claim of ineffective assistance of appellate counsel utilizes the same Strickland standard that is applied to trial counsel.  Smith v. Robbins, 528 U.S. 259, 287 (2000).

Petitioner first argues that appellate counsel was ineffective in formulating the argument he attempted to raise at page 38, n. 8 of his brief.  Page 38 of the opening brief contains footnote 21.  Petitioner apparently mistakenly refers to this footnote as n. 8.  In this footnote, counsel argued that petitioner's waiver of his right to a jury trial did not include a waiver of his right to a jury trial as to his prior convictions.  (Respondent's Lodged Document A, p. 38.)  As discussed above, the California Court of Appeal addressed and rejected this claim.  (Respondent's Lodged Document D, attachment, pp. 9-10, n. 5.)  It is not clear how any additional "formulation" of the claim by appellate counsel would have resulted in a different

47

1  outcome.  Accordingly, this claim of ineffective assistance of appellate counsel is without merit.

2          Petitioner also argues that appellate counsel was ineffective for raising any issue

3  of ineffective assistance of trial counsel.  In reviewing ineffective assistance of counsel claims,

4  California courts apply the <u>Strickland</u> test set forth above.  <u>See</u> <u>People v. Ledesma</u>, 43 Cal.3d

5  171, 216 (1987) (applying the <u>Strickland</u> test).  As discussed above, petitioner's ineffective

6  assistance of counsel claims are without merit.  Because these claims would have been denied

7  had they been raised on appeal, appellate counsel was not ineffective for failing to raise them.

8          Petitioner also argues that appellate counsel was ineffective for filing a poorly

9  prepared appellate brief.  In support of this claim, petitioner cites page 13 n. 8, of the state

10  appellate opinion.  In this footnote, the California Court of Appeal commented on appellate

11  counsel's writing style:

12              In addressing these first two arguments in his reply brief, defendant's counsel
              stated, "this author tends to write in long, convoluted sentences - those with much
13              punctuation - as a stream of related consciousness-type thoughts, extremely
              non-Hemingway-like; and, at times, to have sentences run into page-long
14              paragraphs; but, nonetheless, to understand in his own mind that thought he thinks
              will somehow be grasped. Alas, it often is not understood in its context or hard to
15              fathom, he has been told." Not surprisingly, defendant's briefing of this subject
              covered 31 pages. We suggest defendant's self-diagnosis of his writing is accurate.
16              We further suggest he would be of more assistance to his clients as well as this
              court if he strove to convert his prose into clear, concise points of law and fact
17              that can be easily understood.

18  (Respondent's Lodged Document D, attachment, p. 13 n. 8.)

19          While appellate counsel's writing style may not have impressed the California

20  Court of Appeal, it did not result in ineffective assistance of counsel.

21          The denial of these claims by the California Supreme Court was not an

22  unreasonable application of clearly established Supreme Court authority.  Accordingly, this claim

23  should be denied.

24  <u>Conclusion</u>

25          Petitioner's application for a writ of habeas corpus should be denied.  If petitioner

26  files objections, he shall also address if a certificate of appealability should issue and, if so, as to

which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

§ 2253(c)(2).  The certificate of appealability must "indicate which specific issue or issues

satisfy" the requirement.  28 U.S.C. § 2253(c)(3).

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a

writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

one days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

objections shall be filed and served within fourteen days after service of the objections.  The

parties are advised that failure to file objections within the specified time may waive the right to

appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 18, 2010

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

cro447.157