**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Courtney Crosby,
           *Petitioner-Appellant,*

              v.

T. Schwartz,
           *Respondent-Appellee.*

No. 10-17726

D.C. No.
2:05-cv-00047-
GEB-KJN

OPINION

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, District Judge, Presiding

Argued and Submitted
March 13, 2012—San Francisco, California

Filed May 4, 2012

Before: John T. Noonan, Jr., M. Margaret McKeown, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.;
Partial Concurrence and Partial Dissent by Judge Noonan

4783

**COUNSEL**

Eric Weaver (argued), Albany, California, for petitioner-appellant Courtney Crosby.

Kamala D. Harris, Michael P. Farrell, and David Andrew Eldridge (argued), Office of the California Attorney General, Sacramento, California, for respondent-appellee T. Schwartz.

## OPINION

M. SMITH, Circuit Judge:

Courtney Crosby appeals the district court's denial of his federal petition for a writ of habeas corpus. He raises three claims on appeal. First, Crosby challenges the California Court of Appeal's conclusion that his waiver of his Sixth Amendment right to a jury trial was valid. Second, he claims that the California court erred in finding that the trial court acted within its discretion to deny his subsequent attempt to withdraw the jury trial waiver. Finally, Crosby contends that the California court erred in finding that his sentence of 26 years to life under California's Three Strikes Law did not constitute cruel and unusual punishment under the Eighth Amendment. Because we conclude that these holdings of the California Court of Appeal were neither contrary to, nor involved an unreasonable application of, clearly established Federal law, we affirm the district court's denial of Crosby's habeas petition.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 5, 1999, Sacramento police responded to a call for disturbing the peace at the Ethan Terrace Apartments in Sacramento County. Police found petitioner Crosby and another man named Rivers upon arrival at the scene. Crosby initially told the officer his name was Sirleaf Flomo, and when asked for identification, produced a falsified driver's license and a stolen Social Security card. He was finally identified by Rivers as Courtney Crosby. When the officer ran a check on Crosby's real name, he discovered that Crosby had an outstanding felony no bail warrant for violation of California Penal Code Section 290, California's sex offender registration statute. The officer arrested Crosby. The officer found several other stolen identification and insurance cards in Crosby's wallet.

Crosby was charged with three counts of failing to register under Section 290. Section 290, as it read when Crosby was arrested, stated that every person who qualifies, "for the rest of his or her life while residing in, or, if he or she has no residence, while located within California, shall be required to register with the chief of police of the city in which he or she is residing, or if he or she has no residence, is located, or the sheriff of the county if he or she is residing, or if he or she has no residence, is located, in an unincorporated area or city that has no police department." Cal. Penal Code § 290(a)(1)(A) (1998) (emphasis added). Section 290(g)(2) provides that anyone who is required to register under this section because of a prior felony conviction, but fails to do so, is guilty of a felony. *Id.* § 290(g)(2). One of Crosby's failure to register counts was dismissed before Crosby proceeded to trial. Thus, at trial, Crosby faced two charges. He faced one count for failing to register within five working days after moving from his residence, in violation of Section 290(f). Crosby faced another court for failing to register within five working days of his birthday, in violation of Section 290(a)(1)(c). Crosby was further alleged to have three prior felony convictions for 1) rape, Cal. Penal Code § 261a(2), 2) forced copulation, Cal. Penal Code § 288(c), and 3) robbery, Cal. Penal Code § 667(b)-(i).

Prior to trial, Crosby's counsel and the prosecutor discussed whether to proceed to trial on the Section 290 registration charges first or the separate charges for receiving stolen property. Crosby's counsel informed the court that Crosby would waive his right to a jury trial for the Section 290 charges, and the court engaged in a colloquy with Crosby in which Crosby waived his right to a jury trial.

At Crosby's bench trial, the assistant manager at Crosby's last registered address, Ethan Terrace Apartments, testified that Crosby lived at the apartment with his mother and moved out on February 14, 1999. A friend of Crosby, April Lowe, testified that Crosby told her around March 30, 1999 that he

had been living in West Sacramento for about two weeks, and that he may have told her that he had stayed at the Dodge City Inn prior to that.

Crosby was initially registered as a sex offender on February 27, 1989. Records indicated that he executed three annual updates and nine change of address updates after his initial registration. Testimony from Sacramento Deputy David Anderson established that Crosby last executed an annual registration form on July 15, 1998, reporting his address as 1822 Ethan Way, Apartment 23 in Sacramento. Crosby did not file any more registration updates through the date of his arrest on July 15, 1999.

The trial judge found Crosby guilty of failing to annually register and failing to register within five days of his birthday. The trial court also found as true Crosby's prior felony convictions and prior prison term. Crosby was sentenced under California's Three Strikes Law to an indeterminate sentence of 25 years to life, plus a one-year enhancement for his prior prison term. The California Court of Appeal affirmed the conviction on appeal.

## JURISDICTION AND STANDARDS OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's denial of a 28 U.S.C. § 2254 petition for writ of habeas corpus *de novo*. *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002). We review findings of law made by the district court for clear error. *Id.*

We apply the deferential standard of review of the Antterrorism and Effective Death Penalty Act (AEDPA) to Crosby's petition. *Brown v. Horell*, 644 F.3d 969, 978 (9th Cir. 2011). Under AEDPA, we are barred from granting habeas relief on any claim that has been adjudicated on the merits in California state courts unless the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Harrington v. Richter*, 131 S. Ct. 770, 783-84 (2011). We review the last reasoned state court decision—here, the California Court of Appeal's decision. *Horell*, 644 F.3d at 978.

"Clearly established" federal law refers to the "holdings, as opposed to the dicta, of the [Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (internal citation and quotation omitted). A "state-court decision can be 'contrary to' th[e] Court's clearly established precedent . . . if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state-court decision would also be contrary to the "Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [that] precedent." *Id.* A state court decision is an "unreasonable application" of clearly established federal law if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. In evaluating what is an unreasonable application, the fact that a state court decision is incorrect or erroneous is not enough; rather, it must be "objectively unreasonable." *Lockyer*, 538 U.S. at 75.

The Supreme Court recently emphasized the extremely deferential nature of this review. Explaining that while Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state court proceedings," the Court emphasized that AEDPA only permits the court to grant a writ of habeas corpus "where there is no possibility that fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's prece-

dents." *Harrington*, 131 S. Ct. at 786. Our review of Crosby's appeal is thus limited by the constraints of AEDPA.

## DISCUSSION

### I.  Jury Waiver

**[1]**  Crosby first contends that he should be granted habeas relief because his jury waiver was ineffective. The right to a jury trial, conferred by the Constitution, is waivable, as long as the waiver includes the consent of the government counsel, the sanction of the court, and the "express and intelligent consent of the defendant." *Patton v. United States*, 281 U.S. 276, 312 (1930), *overruled on other grounds by Williams v. Florida*, 399 U.S. 78, 92 (1970). We hold that the California Court of Appeal reasonably concluded that Crosby's jury trial waiver was express and intelligent.

The following colloquy occurred at a hearing on February 7, 2002, during which the court discussed scheduling matters for Crosby's charges for Section 290 failures to register and his receipt of stolen property:

> **THE COURT**: Mr. Crosby, you do have on these matters the right to a speedy public jury trial. That is one of the rights that you have. The Court's perfectly willing to go down that road and have jury trials. That's what we do all the time. We've got plenty of seats out in the audience, plenty of places for the jurors here, and we're perfectly willing to proceed in that fashion.
>
> Although you do have the right to waive a jury trial, that is to give up a jury trial, that is one of the rights that you have as long as the District Attorney's Office would consent to that. Mr. Higgins has already indicated to the Court that the D.A.'s office would consent to your waiver of a jury trial in the

290 case, the failure to register charge that's against you.

Mr. Crosby, have you discussed that with your counsel, and are you satisfied that you want to waive your right to a jury trial in that case?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Mr. Walton, do you join in that waiver?

**MR. WALTON**: Join, Your Honor.

**THE COURT**: The People join in that waiver?

**MR. HIGGINS**: Yes. People join, Your Honor.

**THE COURT**: Mr. Crosby, if you waive your right to that jury trial, then I as the judge in the matter would act as not just the judge but also the finder of fact as to whether or not those allegations against you were true or not true and whether you were guilty or not guilty of the three charges included in that Information. Do you understand that?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: It appears to me that you understand what is going on, Mr. Crosby. So the Court will accept your waiver of a jury trial, and it will proceed as a court trial on the 290 charge, that's case 03592.

The California Court of Appeal evaluated the above colloquy, with an understanding that a jury trial waiver would only be valid if it is made knowingly and intelligently, with a full understanding of the right being abandoned and the consequences of the abandonment of that right. The state court

rejected Crosby's arguments that the above exchange only showed that he "understand" and "wanted to" waive the right, but did not expressly do so, and found that the colloquy established that he expressly waived the right.

**[2]** We cannot say that this conclusion was contrary to or an unreasonable application of clearly established Supreme Court law. Crosby first answered "yes" when the court asked him "Mr. Crosby, have you discussed that with your counsel, and are you satisfied that you want to waive your right to a jury trial in that case?" Crosby then answered "yes" when the court asked him if he understood what he would be giving up. Taken together, it was not objectively unreasonable for the appeals court to conclude that Crosby knowingly and intelligently waived his jury trial rights. *See Lockyer*, 538 U.S. at 75-76.

Crosby argues on appeal that he did not expressly waive his rights. However, the record belies this contention. The court expressly asked, "are you satisfied that you want to waive your right to a jury trial," and Crosby answered the question in the affirmative. While Crosby acknowledges this answer, he argues that the court recognized that Crosby had not agreed because it prefaced the subsequent question regarding the consequences of waiver with "if you waive your right to that jury trial." We agree with the California Court of Appeal that this argument amounts to grammatical parsing, and that the exchange between Crosby and the court just prior to this statement cannot be ignored. Moreover, even if it were plausible to construe the phrase as Crosby urges, under AEDPA's deferential review, a simple mistake or error on the part of the state court is not enough, and we cannot conclude that there is no possibility that fairminded jurists could agree with the state court's interpretation. *Harrington*, 131 S. Ct. at 786. Additionally, to the extent that Crosby now argues that misapplication of laws by the state court somehow deprived him of a liberty interest protected by the Fourteenth Amendment against arbitrary deprivation by the state, this claim is barred

by exhaustion because he did not raise the issue in the state court. 28 U.S.C. § 2254(b).

Accordingly, we reject Crosby's argument that the California Court of Appeal's conclusion on the validity of the jury waiver was contrary to or an unreasonable application of Supreme Court precedent.

## II.   Withdrawal of Jury Waiver

Crosby next argues that he should be granted habeas relief because the trial court erroneously denied his subsequent request to withdraw his jury waiver. We deny Crosby's petition on this ground because he has not established that there is any clearly established Supreme Court law that holds that the Constitution guarantees a right to a jury trial after a valid waiver of that right.

The bench trial was set to begin four days after Crosby waived his rights to a jury trial. The morning of trial, Crosby attempted to withdraw his jury waiver. The trial judge denied the request, finding that it was within his discretion to decide whether to accept the withdrawal or reject it. In particular, the court pointed to the fact that the motion was made just before the first witness was to be put on the stand, that days had been wasted that could have been used to select a jury, and that all the witnesses were ready to go that day as scheduled.

The California Court of Appeal found that the trial court properly considered the timeliness of the motion on the day trial was set to begin, and the impact on the witnesses who were ready to take the stand that day. Thus, the court concluded that the trial court's decision to deny the withdrawal request was not an abuse of discretion.

[3] As previously discussed, Supreme Court precedent establishes that a defendant has a right to a jury trial, but that right is waivable, as long as the waiver is express and intelli-

gent. *Patton*, 281 U.S. at 312. However, *Patton* is silent on whether there is a duty for a court to restore the right to jury trial, once the defendant has validly waived it, upon request of the defendant. Crosby fails to point us to, nor have we found, any Supreme Court case that deals squarely with this issue. Thus, there is no "specific legal rule that has been squarely established" on this issue by the Supreme Court. *Harrington*, 131 S. Ct. at 786.

The Sixth Circuit in *Sinistaj v. Burt*, 66 F.3d 804 (6th Cir. 1995) reached the same conclusion. The Sixth Circuit found that there was no authority for the proposition that "when a state court abuses its discretion in denying a defendant's motion to withdraw a previously filed waiver of jury trial, the result is a violation of the United States Constitution." *Id.* at 808. Finding that perhaps such a violation could be made out in certain circumstances, the court emphasized that it could "conceive of no situation in which a federal judicial determination on *habeas* collateral review that a state court, as a matter of general law, abused its discretion in denying the withdrawal motion is therefore a violation of the federal Constitution." *Id.* (emphasis in original). Addressing a similar issue in the context of an attempted withdrawal of a waiver of the right to counsel, we held in *John-Charles v. California*, 646 F.3d 1243 (9th Cir. 2011), that there was no Supreme Court precedent to establish an absolute right to reinstate counsel after a valid waiver of the right to counsel under *Faretta v. California*, 422 U.S. 806 (1975).

[4] Nor can we say that the California Court of Appeal's conclusion violates the general principles regarding the waiver of a jury trial set forth in Supreme Court cases, such as *Patton*. We have held that while waiver of a jury trial is not forever binding on the defendant, the right to withdraw it is not absolute and it may only be withdrawn if it is timely. *United States v. Mortensen*, 860 F.2d 948, 950-51 (9th Cir. 1988). A request is timely if "granting the motion would not unduly interfere with or delay the proceedings." *Id.* at 950

(finding that withdrawal request was untimely when it was made on the morning of trial). Thus, fairminded jurists certainly could agree with the state court's conclusion that the trial court did not abuse its discretion when it denied Crosby's request for withdrawal the day trial was set to begin as untimely because granting it would have interfered with and delayed his trial.

**[5]** Accordingly, we also reject Crosby's argument that the California Court of Appeal's conclusion as to the withdrawal of jury waiver was contrary to or an unreasonable application of Supreme Court precedent.

## III.   Eighth Amendment Claim

Crosby's last claim is that his sentence of 26 years to life violates the Eighth Amendment because it constitutes cruel and unusual punishment. Crosby was convicted of both failing to annually update his registration five days after his birthday, in violation of former California Penal Code § 290(a)(1)(c), and failing to register within five days of a change of address, in violation of former California Penal Code § 290(f). The trial court found as true three prior felony convictions for rape, forced copulation, robbery. Based on these qualifying priors and the current conviction, the trial court sentenced Crosby to 26 years to life under California's Three Strikes Law.

**[6]** The Eighth Amendment commands that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The clause against cruel and unusual punishment prohibits "not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284 (1983); *see also Rummel v. Estelle*, 445 U.S. 263, 274 n.11 (1980) (upholding the life sentence under a Texas recidivist sentencing statute, but cautioning that a

proportionality principle could come into play in extreme circumstances).

**[7]** To apply the deference required under AEDPA, we first must determine what constitutes clearly established Federal law in this context. As we previously recognized in *Gonzalez v. Duncan*, 551 F.3d 875 (9th Cir. 2008), what is clear is that a "gross proportionality principle" applies when evaluating a terms of years sentence under the Eighth Amendment. *Id.* at 882 (citing *Lockyer*, 538 U.S. at 72). However, the precise contours of this principle are unclear, and it has been applied only in exceedingly rare and extreme circumstances. *Andrade*, 538 U.S. at 73.

In *Solem v. Helm*, the Supreme Court announced three factors that serve as guidance in reviewing a terms of years sentence under the Eighth Amendment. First, "we look to the gravity of the offense and the harshness of the penalty." *Solem*, 463 U.S. at 290-91. Second, "it may be helpful to compare the sentences imposed on other criminals in the same jurisdiction." *Id.* at 291. Third, we may "compare the sentences imposed for commission of the same crime in other jurisdictions." *Id.* The Supreme Court applied these factors to a conviction for uttering a no account check for $100 under South Dakota's recidivist statute, where the defendant also had priors for three burglaries, obtaining money under false pretenses grand larceny, and driving while intoxicated. *Id.* at 281-82. The court found that the sentence violated the Eighth Amendment, noting that Solem's offense was "one of the most passive felonies a person could commit" and did not involve violence or the threat of violence to any person. *Id.* at 296 (internal quotation marks omitted).

**[8]** However, despite its enunciation of the three factors in *Solem* and concluding that Solem's sentence violated the Eighth Amendment, the Supreme Court has since handed down several opinions upholding sentences under the disproportionality principle without agreeing on a uniform set of

factors lower courts are to consider when deciding such sentencing cases. *See Harmelin v. Michigan*, 501 U.S. 957 (1991) (upholding life sentence for possession of more than 650 grams of cocaine, but without a majority opinion agreeing on what factors comprise the gross proportionality test); *Ewing v. California*, 538 U.S. 11 (2003) (plurality opinion) (upholding a life sentence under California's Three Strikes Law for a felony conviction for grand theft of personal property (golf clubs) in excess of $400, without a majority opinion). Finally, in *Lockyer v. Andrade*, the Supreme Court upheld a California Three Strikes 25 to life sentence for petty theft convictions for theft of $153.54 worth of videotapes. 538 U.S. at 66. The Supreme Court has emphasized that a term of years sentence only violates the Eighth Amendment in extraordinary circumstances. *Id.* at 77. The Supreme Court also emphasized that "[o]ur cases exhibit a lack of clarity regarding what factors may indicate gross disproportionality." *Id.* at 72.

We have applied the Supreme Court's nebulous gross disproportionality test in a number of habeas cases challenging convictions under California's Three Strikes Law, and have reached different results based on the factual situations presented in each case. *See Ramirez v. Castro*, 365 F.3d 755, 756, 767-75 (9th Cir. 2004) (holding that a life sentence for shoplifting of a $199 VCR with qualifying priors for shoplifting was "harsh . . . beyond any dispute" and an "extremely rare case" where the state court unreasonably applied the gross disproportionality principle); *Nunez v. Ramirez-Palmer*, 485 F.3d 432, 440, 443 (9th Cir. 2007) (upholding a life sentence for conviction for shoplift of $114.40 worth of tools); *Taylor v. Lewis*, 460 F.3d 1093, 1101 (9th Cir. 2006) (upholding a life sentence for possession of 0.036 grams of cocaine following long history of recidivism, including violent crimes); *Rios v. Garcia*, 390 F.3d 1082, 1083 (9th Cir. 2004) (upholding a life sentence for stealing $79.98 worth of watches with prior robbery convictions).

It was against this background that we decided *Gonzalez v. Duncan*, 551 F.3d 878 (9th Cir. 2008), a case involving a Sec-

tion 290 conviction as the triggering offense for a Three
Strikes sentence. Gonzalez was convicted of failing to annu-
ally register within five days of his birthday, as required under
the sex offender statute. *Id.* at 878. This is one of the charges
of which Crosby was convicted. Gonzalez was acquitted of
the other charge of which Crosby was convicted—failing to
register after a change of address. *Id.* Applying the *Solem*
framework, we found that failing to annually register as a sex
offender was a purely regulatory offense. *Id.* at 884. We
stated that the purpose of the sex offender registration law is
to prevent recidivism in sex offenders by making sure they are
available for police surveillance. *Id.*

[9] Importantly, we contrasted the annual registration
requirement and the address change registration requirement
of Section 290. The annual registration requirement is "only
tangentially" related to the state's interest in ensuring that sex
offenders are available for police surveillance, and it is a mere
backup measure to ensure the authorities have accurate infor-
mation. *Id.* Thus, failure to comply with the annual registra-
tion requirement is a technical violation that by itself poses no
danger to society. *Id.* In contrast, we noted that the address
change requirement is directly related to the state's interest in
ensuring that it knows the whereabouts of its sex offenders.
*Id.* We observed that the California courts have made a dis-
tinction between the two registration requirements and that
this distinction is "critical" to our analysis. *Id.* at 885.

When *Gonzalez* was decided, we did not have the benefit
of any decision from the Supreme Court, or our own court's
interpretation of the Supreme Court's disproportionality prin-
ciple, to guide our analysis regarding a conviction for failure
to register as a sex offender. We stand on different ground
today. *Gonzalez* does not present a factual situation identical
to what we face here, but its logic and reasoning remain
highly instructive and persuasive.

Crosby and Gonzalez differ because Crosby was convicted
of the other charge of which Gonzalez was acquitted—failing

to register within five days of a change of address. We found a clear distinction between the address change requirement and the annual registration requirement in *Gonzalez*, and we cannot ignore that distinction here. In light of the distinction made in *Gonzalez*, we cannot say the state court's decision was objectively unreasonable or that there is no possibility that fairminded jurists could agree with the decision.

**[10]** The California Court of Appeal concluded that Crosby's conviction was not merely a technical violation. The court observed that Crosby was not living at the address shown in his last registration, and that when the officer confronted Crosby prior to his arrest, he actively lied about his identity, and provided falsified identification cards, in an attempt to evade and deceive law enforcement. In *Gonzalez*, we concluded that a conviction for failure to register after an address change is directly related to the state's interest in ensuring that it knows the whereabouts of its sex offenders. *Gonzalez*, 551 F.3d at 884. This distinction puts the conviction here in stark contrast to the mere technical violation for failure to annually register. *Id.*

**[11]** The California Supreme Court has also held that this distinction is crucial. In *People v. Meeks*, 123 Cal. App. 4th 695 (2004), the court held that a life sentence for failure to register after a change of address did not violate the Eighth Amendment. Similar to Crosby, the defendant in *Meeks* vacated his registered residence, and lived in various places without registration, including with family and spending some time on the streets, prior to his arrest. *Id.* at 701. The court found that the address change registration requirement is one that is "intended to avoid, or at least minimize, the danger to public safety posed by those who have been convicted of certain sexual offenses." *Id.* at 708. The court emphasized the importance of continued registration in order to effectuate the purpose of the registration requirement, and rejected the defendant's contention that the crime was *de minimis* because of its grounding in society's interest in having sex offenders

readily available for police surveillance at any time. *Id.* at 709-10 ("We see nothing 'de minimis' either in the offenses in the abstract or in the circumstances attending their commission."). In contrast, in *People v. Carmony*, 127 Cal. App. 4th 1066 (2005), the California Supreme Court held that a life sentence for failure to annually register violates the Eighth Amendment. The court emphasized that the defendant had not moved since his last registration, so there was no new information to update, and the defendant in fact still lived at his last registered address when he was arrested. *Id.* at 1072-73. The court discussed at length the legislative history behind the annual registration requirement and found that this section was "intended to address the problem of offenders who fail to notify authorities of an address change" and was a "backup measure to ensure that authorities have current accurate information." *Id.* at 1078-79. The court additionally pointed out that "because defendant did not evade or intend to evade law enforcement officers, his offense was the *most technical and harmless* violation of the registration law we have seen." *Id.* at 1078 (emphasis added).

  **[12]** In light of our opinion in *Gonzalez* and the California Supreme Court's holdings in *Carmony* and *Meeks*, we cannot conclude that the state court acted unreasonably when it applied the disproportionality principle to Crosby's case in the same way we and the California Supreme Court have done. Crosby's factual circumstance is virtually indistinguishable from the factual circumstance in *Meeks*. Taken together, these three cases emphasize a consistent principle found in the sex offender registration context—whether the crime is a *de minimis* crime for which a life sentence is disproportionate is related to how closely the violation is tied to helping achieve the purposes of the sex offender registration statute. *See Gonzalez*, 551 F.3d at 884-85; *Carmony*, 127 Cal. App. 4th at 1078-79; *Meeks*, 123 Cal. App. 4th at 708-10. Thus, the state court was not objectively unreasonable when it concluded that Crosby's failure to register after he moved was not a mere technical offense. Crosby was no longer living at his last reg-

istered address at the time of his arrest, and his failure to register impeded the police's ability to find him for surveillance. The state court's decision is even more reasonable because, unlike the defendant in *Carmony*, there was evidence that Crosby was actively attempting to evade his obligation to register through the theft and falsifying of stolen identification cards.

[13] Additionally, the California Court of Appeal found that Crosby's prior convictions were serious and violent crimes. It noted that during the incident resulting in the rape and forcible copulation convictions, Crosby engaged in multiple acts of violence and threatened the life of the victim. It was further noted that during the prior robbery conviction, Crosby and an accomplice robbed a restaurant at gunpoint. The use of violence in Crosby's prior convictions distinguishes his case from those in which the inference of disproportionality was found to be met by the court.[1] *See Solem*, 463 U.S. at 298 (discussing how Solem's prior convictions were all "nonviolent and none was a crime against a person"); *Ramirez*, 365 F.3d at 755 (emphasizing how Ramirez's prior convictions were all nonviolent in nature and that no weapons were involved in the offenses).

[14] Circumstances satisfying the gross disproportionality principle are rare and extreme, and constitutional violations

---

[1]We acknowledge that in *Gonzalez*, the defendant had a criminal history that was "extensive" and included a conviction for forcible rape and lewd conduct with a child. 551 F.3d at 886. However, in spite of the extensive priors, the court found the sentence was still too harsh because the current crime did not reveal any propensity to recidivate. *Id.* at 887. Crosby's prior convictions cannot be excused by such a lack of relationship; rather the conviction for failing to register after an address change, with evidence of intentional evasion of the requirement, can be said to be rationally related to recidivism. *See Meeks*, 123 Cal. App. 4th at 709 (recognizing that "sex offenders present a serious danger to society because of their tendency to repeat their sexual offenses" and that a history of prior sexual crimes may make one a person "who law enforcement needs to have readily available for police surveillance at all times").

on that ground are "only for the extraordinary case." *Lockyer*, 538 U.S. at 77. Crosby's challenge arises under AEDPA, and we must give the appropriate deference to California Court of Appeal's decision. In light of the various cases that have dealt precisely with sex offender registration convictions under the gross disproportionality principle, it was not an unreasonable application of clearly established federal law for the California Court of Appeal to affirm Crosby's sentence under the Eighth Amendment.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court to deny Crosby's petition for a writ of habeas corpus.

---

NOONAN, Circuit Judge, concurring and dissenting:

**First lawyer:** "His sentence is imprisonment. Twenty-five years to life."

**Second lawyer:** "That's pretty standard."

**First lawyer:** "It depends on the crime. Crosby's crime was failing to let the state know of his change of address. The maximum penalty for this offense by itself is three years."

**Second lawyer:** "So he was a recidivist. He had already committed two serious felonies. This was his third strike. Naturally, the penalty is sharper."

**First lawyer:** "The penalty has been enormously enlarged. The key to constitutional sentencing is proportionality. The sentence imposed on Crosby is out of all proportion to his failure to report his change of address. Violent crimes such as robbery and voluntary manslaughter draw lesser punishment.

Even rape, the most brutal of sex crimes, would not by itself draw this kind of penalty. How can it be that an offense which in itself is passive, which in itself harms no one, will justify incarceration up to the end of Crosby's life?"

This hypothetical conversation assumes that governing law on the subject was established by the United States Supreme Court, notably in *Solem v. Helm*, 463 U.S. 277 (1983). The state of California does not share this view. The state bases its position on quotations from *Ewing v. California*, 538 U.S. 11 (2003).

In *Ewing*, Justice O'Connor delivered what the official report describes as "an opinion." It was concurred in by two members of the Court, Chief Justice Rehnquist and Justice Kennedy. Justice Scalia and Justice Thomas, who did not find the Eighth Amendment applicable, concurred in the judgment reached by the three. Justice Stevens, Justice Souter, Justice Ginsburg, and Justice Breyer dissented.

In oral argument in the present case, the state of California asserted that footnote 2 of Justice O'Connor's three-justice opinion stated controlling law. I quote from its responses to questions from our court:

> **Assistant Attorney General**: More importantly, and frankly, this was a flaw in *Gonzalez* [*v. Duncan,* 551 F.3d 875 (9th Cir. 2008)] as well, but this court doesn't actually have to decide whether *Gonzalez* was wrong, it's enough that this court recognizes its job is simply to determine what a state court *could* have interpreted *Ewing* to mean, what any, what some fairminded jurist *could* think the case means, and the problem fundamentally is that over and over, the emphasis by petitioner is, my offense really wasn't that bad. Yeah, it was a felony, but it really isn't that bad. The problem, and, going on *Gonzalez v. Duncan* the argument that, well, this offense

doesn't really show a particular *type* of recidivism. None of that matters. Footnote 2 in *Ewing v. California* says flat-out, "the California legislature therefore made a deliberate policy decision that the gravity of the new felony should not be a determinative factor in triggering the application of the three strikes law. Neither the Eighth Amendment nor this court's precedent forecloses that legislative choice." In other words-

**The court**: Where are you quoting that?

**Assistant Attorney General**: That is footnote 2 of *Ewing v. California*, Your Honor. In other words, a fairminded jurist could decide that under United States Supreme Court precedent, it is irrelevant how the felony looks standing alone. Rather, the very fact that before you commit that felony, you had at least two prior serious or violent felonies is enough to make it grave enough, under the Eighth Amendment, for a life term. No amount of ignoring that language is going to work. *Gonzalez* unfortunately didn't cite that language either. *Gonzalez* spent a lot of time talking about, you know, this particular offense, and just ignored the language. I don't know how -

**The court**: If *Gonzalez* had followed that, they would have come out in favor of the state?

**Assistant Attorney General**: I'm sorry?

**The court**: You're saying if *Gonzalez* had been correctly decided, it would have come out in favor of the state?

**Assistant Attorney General**: Oh, to be sure, but the question for you isn't simply whether *Gonzalez* is correct. Rather, it's wrong, but the question for you

> is, could a state court have reasonably understood
> *Ewing* in a way that makes the offense, here, not so
> disproportionate to the punishment. And they could
> have, because the state court could have treated that
> language seriously in *Ewing v. California*.

Oral Argument at 12:52-15:46, *available at* http://
www.ca9.uscourts.gov/media/.

   In its brief to us, the state quotes from Justice O'Connor's
three-justice opinion in *Ewing* to the effect that it is "*enough*"
that California had "a reasonable basis for believing" that "a
*dramatically* enhanced sentence for habitual felons" advanced
the goals of the California justice system (citing *Ewing*, 538
U.S. at 28, and adding italics to *enough* and *dramatically*).
The state's brief continues with quotation from the three-
justice opinion, again acknowledging that the state is adding
italics: " '*Nothing* in the Eighth Amendment prohibits Califor-
nia from making [the] choice' that the way to advance justice
is outright 'incapacitation' of the recidivist." (combining lan-
guage quoted from *Ewing* at 25 with the state's argument).
The force of this remarkable contention appears to be that
there is no limit to the punishment that the state may prescribe
for any recidivist. It is hard to believe that the three-justice
opinion was intended to lift all restraint on the state's reaction
to recidivism. In California's sweeping gloss, proportionality
in sentencing a recidivist has been eliminated. The repeat
felon, however technical his felony, is to be "incapacitated."
With a severity worthy of Sparta, the state of California will
bring to book those who thrice fall afoul of any felony provi-
sion in its legislation.

   I do not believe that the humane restraint of the Eighth
Amendment has been so removed from its role in measuring
the proportion of the penalty to the offense.

   I concur in the remainder of the majority's opinion. I note
that one standard referenced in it is that of "any fair-minded

judge." The standard is similar to the standard of "any reasonable person." It is an objective standard. In disagreeing with a colleague as to whether such a standard is met, a judge is not impugning the reason or the fairmindedness of the colleague with whom the judge disagrees because the objective standard has not been met.